STOKESBERRY ET AL. *v.* REYNOLDS.

ADEMPTION.—*Descents.*—The doctrine of ademption is not applicable to property taken by descent.

SAME.—*Advancements.*—*Partition.*—Where a father, during his lifetime, gives to a son a sum of money, pursuant to a verbal agreement between them that it shall be in full of the interest of the latter in the estate of the former at his death, such sum, in an action by such son or his grantee to partition the real estate of which the father died seized, shall be treated simply as an advancement.

SAME.—*Presumption.*—Where, in an action for partition of real estate among heirs, the contrary does not appear, it will be presumed that the ancestor died intestate.

From the Morgan Circuit Court.

*S. Claypool* and *W. H. Ketcham*, for appellants.

*W. R. Harrison* and *W. S. Shirley*, for appellee.

BIDDLE, C. J.—Petition by Henry Reynolds, against James M. Stokesberry and others, for the partition of certain lands.

The court, at the request of the appellants, made the following finding:

" That John Stokesberry, Senior, died seized of the lands in question in the year 1839, leaving John Stokesberry, Junior, his son, and six other sons and daughters, his heirs at law; and, in the Summer of 1858, the plaintiff obtained from the said John Stokesberry, Junior, a conveyance by quitclaim deed of his interest in the said land in question.

" The court further finds, that about two years before the death of John, Senior, he made an arrangement with said John, Junior, and another son, to the effect that if John, Senior, would give them, the said John, Junior, and his brother, one hundred dollars each, the said John, Junior, and his brother would receive and take the same as an endowment in full for all their interest in their father's estate after their father's death; and, pursuant to this agreement, the father sold another tract of land which

he then owned, for the purpose of raising said two hundred dollars, and thus raised the said sum and paid the same to John, Junior, and his brother, under and pursuant to said agreement.

"And the court further finds, that the said two hundred dollars was more than equal to the value of two-sevenths part of all the estate of John, Senior, at the time of his death, but that the said two hundred dollars is not equal to two-sevenths of said estate, estimating the said land at its present value, or at its value at the commencement of this suit, or at the time of the plaintiff's purchase from John, Junior.

" The court further finds, that, on the day the aforesaid agreement was made, it was also agreed by and between the father and the defendant, that the defendant was to live with his father on the land in question and take care of his father and mother and invalid brother during the lives of each of them, and in consideration of such services he was to have and own the land in controversy. Said agreement, last mentioned, was never reduced to writing, but on the day of his father's death it was agreed to be reduced to writing, but, having deferred it from the forenoon to the afternoon of that day, the father suddenly died in a fit, and said writing was never made. The said defendant, from the time of the payment of the said two hundred dollars as above, remained in possession of said land until the present time, and is now in possession; and said defendant kept and took care of said invalid brother and said father and mother, until they each died; the last of them, the mother, died in 1861. The defendant has made costly and valuable improvements on said lands, and since 1861 put up a good frame house, and cleared and fenced thirty acres of land.

"And the plaintiff bought John, Junior's, interest in the land in 1858, and during the year 1859 he notified defendant thereof, and some negotiations took place between plaintiff and defendant in relation to plaintiff's purchas-

ing defendant's interest. This was before the death of the mother of defendant, and before he had built the new house or made much improvement on the land. The defendant bought the interest and took deed from the other brother, who had been advanced in the same manner as John, Junior. At one time, and before John, Junior, had sold and conveyed his interest to plaintiff, defendant had agreed with John, Junior, to buy his interest, and to pay a horse for the same; that, after his father's death, and up to the time of plaintiff's purchase of John, Junior's, interest, defendant frequently declared he would buy out the other heirs' interest in the land in question, and did buy and take deeds for the interest of all the heirs but John, Junior."

The court stated the conclusions of law upon the above facts, as follows:

"The court finds the sum, to wit, one hundred dollars paid by the father of the plaintiff's grantor, John, Junior, was, and is to be treated as, an advancement out of the estate of the father.

"That plaintiff, by virtue of John, Junior's, conveyance to him, is entitled to one-seventh part of the lands set out in complaint, less and subject to said advancement of one hundred dollars."

The appellants excepted to the above finding and ruling.

Upon what ground the counsel for appellants expect us to reverse this judgment, we are not informed. In their brief they simply state the findings, the conclusions of law, and their exceptions, and pray us to reverse the judgment.

By the brief on behalf of the appellee, it appears that it was insisted in the court below, on behalf of the appellants, that the interest of the vendor of the appellee in his father's estate was adeemed by his accepting the one hundred dollars, as stated in the finding.

We are of a different opinion. The doctrine of ademption

is inapplicable to property taken by descent; it can be applied only to property taken by devise. The meaning of the word—to take away or extinguish—plainly shows its proper application. The advancement to two of his sons of one hundred dollars each, by the ancestor, did not take away or extinguish any thing which belonged to them by devise, or would have belonged to them by devise at his death. Besides, the doctrine of ademption is wholly inconsistent with the doctrine of advancements under our law of descents.

The finding does not state whether the elder Stokesberry died testate or intestate; and as it does not state that he died testate, we must presume that he died intestate. So the case was treated below, and so we must treat it here.

The court was correct in holding the one hundred dollars received by the appellee's vendor from his ancestor as an advancement, and the conclusions of law were properly applied to the facts stated in the finding. *Weston* v. *Johnson*, 48 Ind. 1.

The judgment is affirmed, with costs ·