McCabe, J.
The appellant sued the appellees for the partition of certain real estate situate in Crawfordsville, Indiana, of which it is alleged the plaintiff and defendants were the owners in fee simple, as tenants in common.
A trial of the issues by the court without a jury resulted in a finding for the defendants upon the complaint and a finding for the defendants, and against the said plaintiff, on the cross-complaint of the said defendants that the said defendants, the appellees, were the owners, as tenants in common, of the real-estate described in the complaint and cross-complaint, and that the plaintiff had no interest in the real estate, and upon such finding there was judgment of partition in favor of the appellees over appellant’s motion for a new trial. Overruling that motion is the only error assigned by the appellant. *
The complaint shows that the real estate sought to be partitioned was owned by one Samuel Dazey, who died intestate in 1895, leaving surviving him the appellee, Sarah Dazey, as his surviving widow, and the other appellees as his surviving children and heirs at law.
*536 The appellant claimed to be a grandchild of said Samuel, and the only surviving child and heir of one Mahlon Dazey, deceased, who she claimed bore the legal relation of a child to said Samuel Dazey. The appellant’s evidence shows that her father, Mahlon Dazey, was born out of wedlock on April 5, 1835, and that the appellee, Sarah Dazey, was his mother, and that afterwards, to-wit: on January 12, 1837, she and said Samuel Dazey were married and lived together as husband and wife until the death of said Samuel, already mentioned.
The evidence further shows that Sarah had lived at the house of the father of said Samuel while she was a girl and while said Samuel was a young man living with his father, with other brothers; that while so living she became pregnant with said Mahlon Dazey, and on account of such pregnancy was driven from the house of said Samuel’s father; after which said Mahlon was born, as already mentioned, and thereafter said Samuel married said Sarak, Mahlon’s mother. Said Mahlon died intestate in the army of the Union in 1863, leaving the plaintiff as his only heir.
One of the grounds of the motion for a new trial was the overruling of appellant’s objection to a question addressed to appellee, Sarah Dazey, asking who was the father of Mahlon Dazey. She was the mother of Mahlon, and in answer to the question, over appellant’s objection, she stated that her husband’s brother Jacob, called Little Jacob, was the father of her bastard child, Mahlon. Our statute provides that “if a man shall marry the mother of an illegitimate child, and acknowledge it as his own, such child shall be deemed legitimate.” Section 2631, Burns’ R. S. 1894 (2476, R. S. 1881).
This provision is substantially the same as the statute in force at the time of the marriage of said Samuel *537 and Sarah and has been carried forward into the present revision. Harvey v. Ball, 32 Ind. 98.
The thing to be established under this statute is a legal relation, and not a blood relation, between the alleged father and child. The legal relation arises out of certain facts, namely, the marriage of a man to the mother of a bastard child and the acknowledgment by the man that it is his own. The fact that it is a bastard shows that it has no legal relation to any father. It is to establish such legal relation that the statute was enacted, and not to establish a blood relation. Indeed, the legal relation may be established between the man marrying the mother of a bastard child and such child by the acknowledgment of it as his own by the man, even where the blood relation of father and son does not exist. ■
Accordingly, it was said in Bailey v. Boyd, 59 Ind., at page 297, that “under this statutory provision and the evidence in the record, it seems very clear to us, that Bazil Bailey, Jr., must be deemed and held to be the legitimate son and heir of Bazil Bailey, Sr.; and this would be so, in our opinion, even if the evidence had shown conclusively, that the elder Bazil could not have begotten the younger Bazil.” And in Brock v. State, ex rel., 85 Ind. 397, this court said, on page 399, that “it is clear that the acknowledgment by the father made the child his heir apparent, and removed from it the stain of illegitimacy. It is not important whether the acknowledgment of legitimacy was made for a good or for an evil purpose; it fixed the status of the child, and that cannot be changed by anything the father or mother may do. Having removed the ‘bar sinister,’ they cannot replace it.”
There was evidence tending to prove an acknowledgment by Samuel Dazey of the bastard child, Mahlon Dazey, as his own, after his marriage with its *538 mother. That might have been effectually done so as to create the legal relation of father and son, as we have seen, without any actual blood relation. Therefore, proof that he never begat the bastard child was incompetent because not inconsistent with his alleged acknowledgment of the child as his own. Neither did it tend to contradict the legal relation created by the marriage of Samuel to the mother of the bastard and his acknowledgment of it as his own.
Another witness on behalf of appellees, namely, James McClure, over the objection* of the appellant, testified that in 1863 or 186.4, about the time, or after the death of Mahlon Dazey, Samuel Dazey stated to him that Mahlon Dazey was not one of his children.
This evidence was incompetent for the same reason that the above item was incompetent, and, perhaps, for the further reason that it was hearsay evidence and fell within none of the exceptions to the rule excluding hearsay evidence, and was a self-serving declaration. Board, etc., v. Bacon, 96 Ind. 31; Tobin v. Young, 124 Ind. 507.
Appellees have assigned for cross-error the action of the circuit court in sustaining appellant’s demurrer to appellee’s additional joint paragraph of answer.
This paragraph of answer, is based upon the delivery by Samuel Dazey, and acceptance by appellant, of a note for $557.00. When so delivered, such note had the following indorsement on it: “I assign the within note to Emma Binns, my granddaughter being the share of my estate that I intend her to have, and it is an advancement to her without recourse on me. August the 23d, 1882. Samuel Dazey.”
After describing the note and the indorsement, the answer states: “That plaintiff accepted said note with said indorsement thereon, and afterwards, in December, 1886, received the full and entire amount *539 then due on said note, and has ever since had and held the same.
“That said Samuel Dazey indorsed and delivered said note to plaintiff at the solicitation and request of his wife, Sarah Dazey, the grandmother of plaintiff, for the sake of domestic peace in his family and in full of all the interest she might ever have in his estate, and it was accepted by plaintiff as such; that at the time said Samuel Dazey indorsed and gave said note to the plaintiff he was denying that she was his granddaughter and was denying that Mahlon Dazey, plaintiff’s father, was his son, and that he was then disposing of part of his estate by deed and will to certain of these defendants.
“Wherefore, defendants say that plaintiff has already received her full interest and share in the property and estate of said Samuel Dazey, and has no interest in the property mentioned in the complaint herein.”
This answer is a plea in confession and attempted avoidance.
That is, for the purposes of the answer, the charge in the complaint that the plaintiff was a legal heir of Samuel Dazey is admitted, but the result which would legally flow from such fact is attempted to be avoided by the facts stated. It is claimed by counsel that the facts thus stated amount to an agreement or contract to release the estate of Samuel Dazey from any claim appellant might afterwards have upon it as an heir of Samuel Dazey in consideration of the advancement received.
There is much conflict of authority as to whether such a contract can be legally made or not. 1 Am. and Eng. Ency. of Law (2d ed.), 781, and cases there cited.
This court denied the validity of such a. contract, *540 though made in express terms in Stokesberry v. Reynolds, 57 Ind. 425.
In Nicholson v. Caress, 59 Ind. 39, the answer set up an advancement under a contract, which advancement, it was alleged, “was received and accepted by them in full of all interest in the estate of Thomas Nicholson, deceased.” It appears that the decision turned upon the fact that the advancement equaled the share the heir would have had in the estate of the ancestor.
In Brown v. Brown, 139 Ind. 653, one of the cases relied on by appellees’ counsel, recognizes such a contract when made by way of family settlement, and expressly stipulating that the advancement is to be “in full of all right and claim they or their heirs may have in the estate of said William Brown at his death and final settlement of his estate.”
Such will be found to be the nature of the contract in all the cases counsel have cited upholding such a contract. The same principle is recognized in Bower v. Bower, 142 Ind., at pages 196, 197.
There is certainly no express contract here, nor is there any family settlement. Is there an implied contract? That can only arise from an acceptance of the advancement by the appellant after an expressed intention on the part of the donor that it was to be in full of any further claim by her on the estate he might leave at his death. The only language supposed to convey such an idea is this: “Being the share of my estate I intend her to have.” That language speaks in the present tense. It has no reference to any other estate than that he then owned. It could not, without a great stretch of the natural meaning of the words, be extended to the estate he might have at his death, especially if that was a different estate than that he owned at the time of the advancement. The answer *541 does not show that the estate was the same at the death of the ancestor that it was at the date of the advancement. We need not, and do not decide whether such a contract as this, if fully expressed, would be binding.
The circuit court did not err in sustaining the demurrer to the answer.
For the errors above mentioned the judgment is reversed, with instructions to grant a new trial.