IN RE ESTATE OF JOSEPH B. MORTON, DECEASED, ET AL. V. CHARLES T. MORTON.

FILED JULY 10, 1901.   No. 9,982.

Commissioner's opinion, Department No. 1.

1. **Petition for Distribution of Estate Being Denied, Appeal Lies.** An order of the county court denying a petition for distribution of the personal estate in the hands of an executor and distributable under the terms of the will, and dismissing the petition on the ground that the petitioner is not an heir nor devisee, is appealable.

2. **Meaning of Phrase in Statute.** The expression "adopted into his family," in section 31, chapter 23, Compiled Statute, does not mean adopted in the manner prescribed by chapter 2, title 25, Code, but means admitted and received into one's family, given the family name and acknowledged and recognized as a child.

3. **Rights of Illegitimate Child Under Devise.** An illegitimate child whose parents, before his death, intermarry and have other

children, and whose father has adopted him into his family, as above stated, and so acknowledged him, shall be counted among the legitimate children of a testator and share in a devise "to my children share and share alike" equally with the legitimate children.

ERROR from the district court for Pawnee county. Tried below before STULL, J. *Affirmed.*

*S. P. Davidson,* for plaintiffs in error.

*Martin & Barton, contra.*

HASTINGS, C.

This action began with a petition in the county court of Pawnee county, by Charles T. Morton, defendant in error, for distribution to him of a one-seventh part of the proceeds of personalty of the estate of Joseph B. Morton, deceased. This resulted in a finding that petitioner was not an heir of Joseph B. Morton and not entitled to share in the estate. From this finding, Charles T. Morton appealed to the district court of Pawnee county, where the finding of the county court was reversed, and a decree of the district court entered that upon the final settlement and distribution of the estate of Joseph B. Morton, Charles T. Morton have a one-seventh part of the estate. The petition in the county court seems to have been resisted on the ground that Charles T. Morton was not a child nor a devisee of Joseph B. Morton, nor an heir of any portion of the estate. Such was the finding of the county court, and his action was dismissed. He gave bond for appeal, and in the district court filed a petition setting out the death of Joseph B. Morton August 26, 1889; the probate of his will and provision in it that after the lapse of five years the estate should be divided equally among the testator's children; that the children were seven in all, including the petitioner; that the executor, Gabriel Morton, had $205.90, which should be distributed, and asking for its distribution. The executor moved to dismiss the appeal,

for the reason that the order of the county court was not appealable, not a final order, nor such a judgment as could be brought to the district court on appeal. This motion was overruled, and an exception taken by the executor. The executor then answered on his own behalf and that of all the heirs at law, except Charles T. Morton, denying all the latter's allegations, and denying that he was a son or heir of Joseph B. Morton, or interested in the estate. They admitted the death of Joseph B. Morton August 26, 1889, testate, but say that the will provided for the sale of his real estate; that it had not been sold for want of bidders, though all diligence had been used to sell it; that final distribution could not be made until the real estate could be sold. On the hearing in the district court, a general finding that Charles T. Morton was an heir and entitled to one-seventh of the estate was made, as above indicated. Motion for a new trial, because the finding was against the weight of the evidence, and for error in the admission of certain school director's reports of the deceased, and for error in admitting statements of the deceased, whereby he acknowledged himself to be the father of the petitioner, and for error in overruling the motion to dismiss the appeal, was filed. It is claimed that the district court made its finding on the basis of a supposed compliance with section 31, chapter 23, Compiled Statutes, in regard to acknowledging parentage of a bastard child, in that the deceased had filed sworn reports, as school director, in which he had enumerated Charles T. Morton, under that name, as a member of his family, and named himself as guardian or parent. He had never been appointed guardian, and it was, therefore, urged that the designation of parent alone could apply, and that this was a sufficient acknowledgment to comply with the statute. The petitioner, Charles T. Morton, was born July 18, 1861. Joseph B. Morton and the mother were married February 11, 1862, and a daughter was subsequently born to them. Charles T. Morton was brought up in the household of the deceased, always went by his name, and was treated as a

child by the family, including deceased. There is ample evidence in the record from which a court might find that the deceased had acknowledged himself to be the father of Charles T. Morton. It is claimed, however, that this intermarriage of his parents, rearing him in the family of the deceased, and under his name, and acknowledging him as a child, does not legitimate him; that notwithstanding this he is not an "heir," nor legally a child, nor included in the "children" to whom the estate is bequeathed "share and share alike." As above indicated, the objections to the finding and decree of the district court may be summed up in two: That the appeal should have been dismissed, and that the finding is against the weight of the evidence.

As to the first point, the question is simply whether Charles T. Morton, claiming to be an heir, could apply for a distribution of the personalty in the hands of the executor, or whether he was bound to wait until such time as the executor had disposed of the real estate. It would seem that the question of his heirship, and his right to participate in the proceeds of the estate and bring an action with reference to it, might be raised at any point in the proceedings, where interference on his part would be appropriate; and the fact that when he appeared before the county court to ask for a portion of the personalty in the hands of the executor, he was met by the objection that he had no interest in the estate, brought that question at once to the consideration of the court, and its finding, when once made, if not appealed from, would have been conclusive on both the court and the parties. If such was the case, then, clearly this order of the county court dismissing his petition for that reason was appealable, and the motion to dismiss the appeal was rightly overruled. *In re Jessup's Estate,* 81 Cal., 408.

The question of the sufficiency of the evidence in this case to uphold the district court's finding that the petitioner was a child of the deceased, and included in the terms of the will, seems to depend upon the construction of section 31, chapter 23, Compiled Statutes. The con-

tention that the director's reports are a sufficient acknowledgment of the paternity of Charles T. Morton has been ruled against by this court. *Lind v. Burke,* 56 Nebr., 785. No other acknowledgment in writing is claimed, and plaintiff in error says that he is not permitted, under that statute, to make any claim as heir, nor can he be included among the testator's children, unless he is held to be legitimated. 1 Blackstone, Commentaries, 459; 4 Kent, Commentaries, 413; *Lind v. Burke, supra.* The statute cited provides as to an illegitimate child, "he shall not be allowed to claim, as representing his father or mother, any part of the estate of his or her kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried and had other children, and his father, after such marriage, shall have acknowledged him, as aforesaid, or adopted him into his family, in which case such child and all legitimate children shall be considered as brothers and sisters." It is claimed on the part of the plaintiff in error that the acknowledgment must be in the manner provided in the previous portion of the section, by writing, signed in the presence of a competent witness. It is claimed that the adoption into his family must be in the manner pointed out by chapter 2, title 25, of the Code. So far as the acknowledgment is concerned, the contention must be sustained, because the reference is definite and precise. The child must be "acknowledged as aforesaid." The question remains as to the meaning of the phrase "or adopted into his family." In *Blythe v. Ayres,* 96 Cal., 532, 31 Pac. Rep., 915, and in *Eddie v. Eddie,* 8 N. Dak., 376, 79 N. W. Rep., 856, a statute identical with this one was construed, and in both cases it was held that the adopting into the family consists in "publicly acknowledging the child as his own, receiving him as such with the consent of his wife into his family, otherwise treating it as if it were a legitimate child." But we find that in each of those states there is added to the general provision for the adoption of a child, other than one's own, a provision that the father of an illegitimate child, who treats it in the manner stated,

thereby adopts it, and the child is thereupon deemed for all purposes legitimate. Nebraska has no such statute. It had, during all the years that this child was growing up in Joseph B. Morton's family, a provision whereby persons might adopt the child of another. Code of Civil Procedure, title 25, ch. 2, secs. 796-801. This law was not changed in its terms until the passage of chapter 94, Laws of 1897, eight years after the death of Joseph B. Morton. There was in it no authority whatever for the father of an illegitimate child adopting it. We are cited to the proposition that the common law knows no such thing as adoption. *In re Thorne's Will,* 155 N. Y., 140; *Morrison v. Sessions,* 70 Mich., 297, 38 N. W. Rep., 249; *Ballard v. Ward,* 89 Pa. St., 358; *Abney v. De Loach,* 84 Ala., 393. The enacters of the Revised Statutes of 1866, from which we get both section 31, chapter 23, Compiled Statutes, and the law as to adoption as it stood before 1897, could hardly have meant to refer in section 31 to the process of adoption of the child of another provided in title 25 of the Code. They must have had some other adoption in view. The court manifestly would have had no authority to decree an adoption of the party's own child under the latter act. What they intended, it seems, should be taken as indicated by the phrase "into his family." The legislation which provides that one whose parents have intermarried subsequently to his birth, and who has been brought up in his father's family in all respects as his child, shall be deemed legitimate, is as old as the time of Constantine the Great. Gibbon, Decline & Fall, ch. 44,* Guizot's note. The extent to which such legislation has prevailed among the states of the Union is remarkable (2 Kent, Commentaries, 209, note *d*), and especially the extent to which the doctrine has been carried in the state of Ohio, from which our Code was mainly drawn. *Ives v. McNicoll,* 59 Ohio St., 402, 43 L. R. A., 772. It would seem to be the reasonable interpretation of section 31 that an adoption in fact rather than the legal one was what was intended.

*Harper's edition, vol. IV, pp. 352, 353.—REPORTER.

It is true that by the Statute of Merton, cited and staunchly supported by Blackstone, it was decided that in England there should be no such legitimation by subsequent intermarriage of the parents and rearing and treatment of the child as one's own. 1 Blackstone, Commentaries, 456. But this rule has been followed in comparatively few of our states, and we do not think it was intended to be followed in Nebraska. It was early abandoned in the Roman law, and in Novels 74 and 89 of the *Corpus Juris* are to be found nearly all the provisions of modern legislation on this subject. The court was amply justified by the evidence before it in this case, in finding that the petitioner was the natural child of the deceased; that his parents had intermarried within a few months after his birth and other children were born to them; that he had been taken into deceased's family and brought up as his child. Does this show that the deceased "adopted into his family" the petitioner? It is clear that the law of adoption was not available, because we have seen that law only provided a manner for doing it, "Whenever it may be desirable that any person or persons shall adopt the child of another." Code of Civil Procedure, sec. 796, as it was prior to April 12, 1897. As soon as it appeared that the child proposed to be adopted was that of its proposed foster parent, a competent court would at once say there was no jurisdiction, and that the proper step was an acknowledgment. Statutes for the legitimation of children should have at least a fair construction. *In re Estate of Jessup,* 81 Cal., 408; *Blythe v. Ayers,* 96 Cal., 532; *Dickinson's Appeal,* 42 Conn., 491; *Swanson v. Swanson,* 32 Tenn., 446. As is remarked in *In re Estate of Jessup, supra,* "undoubtedly the most satisfactory way of establishing the necessary facts [parentage and acknowledgment] is by proof that the claimant has been received into the family, and given the family name." 81 Cal., 408, 458. Mere adoption under the terms of chapter 2, title 25, of the Code would not necessarily admit the adopted child into the family. It could be maintained elsewhere. It

seems then that adoption under the Code could not have been sufficient or possible. There is nothing left to do but say that "adopted into his family" means simply taken in, given the family name and treated and currently recognized as a child. This is correctly found to have been done in this case, and the judgment should be affirmed.

We therefore recommend that the decision of the district court be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.

NOTE.—Bastardy: *Spurgeon v. Clemmons*, 6 Nebr., 307; *Cottrell v. State*, 9 Nebr., 125; *In re Carleton*, 11 Nebr., 99; *Ex parte Cottrell*, 13 Nebr., 193; *Jones v. State*, 14 Nebr., 210; *Kremling v. Lallman*, 16 Nebr., 280; *Altschuler v. Algaza*, 16 Nebr., 631; *State v. Moran*, 18 Nebr., 536; *Hutchinson v. State*, 19 Nebr., 262; *Masters v. Marsh*, 19 Nebr., 458; *Sang v. Beers*, 20 Nebr., 365; *Ingram v. State*, 24 Nebr., 33; *Ex parte Donahoe*, 24 Nebr., 66; *Denham v. Watson*, 24 Nebr., 779; *Elliott v. Atkins*, 26 Nebr., 403; *Planck v. Bishop*, 26 Nebr., 589; *Dodge County v. Kemnitz*, 28 Nebr., 224; *Strickler v. Grass*, 32 Nebr., 811; *Daly v. Melendy*, 32 Nebr., 852; *Dodge County v. Kemnitz*, 32 Nebr., 238; *Olson v. Peterson*, 33 Nebr., 358; *Burris v. Court*, 34 Nebr., 187; *Dukehart v. Coughman*, 36 Nebr., 412; *Hanisky v. Kennedy*, 37 Nebr., 618; *Dodge County v. Kemnitz*, 38 Nebr., 554; *Robb v. Hewitt*, 39 Nebr., 217; *Munro v. Callahan*, 41 Nebr., 849; *Clark v. Cary*, 41 Nebr., 780; *Stoppert v. Nierle*, 45 Nebr., 105; *Davison v. Cruse*, 47 Nebr., 829; *Lisy v. State*, 50 Nebr., 226; *Harshman v. Ingwerson*, 52 Nebr., 116; *Wurdeman v. Schultz*, 54 Nebr., 404; *Johnson v. State*, 55 Nebr., 781; *Lind v. Burke*, 56 Nebr., 785; *State v. Murdock*, 59 Nebr., 521; *In re Walker*, 61 Nebr., 803; *Myers v. Baughman*, 61 Nebr., 818.—REPORTER.