## HARNESS ET AL. v. HARNESS.

[No. 8,284.    Filed May 9, 1912.]

1.  BASTARDS.—*Legitimation.*—*Effect.*—*Right to Inherit from Father Leaving Legitimate Child.*—Where the father of an illegitimate child married its mother and acknowledged the child as his own, such child is deemed legitimate under the provisions of §3001 Burns 1908, §2476 R. S. 1881, and, although the father was thereafter divorced and married another woman by whom he had children who survived him, such child was entitled to inherit from its father and its right was not affected by §3000 Burns 1908, Acts 1901 p. 288, providing that an illegitimate child may inherit from its father who has acknowledged it as his own, except in case the father left surviving legitimate children or descendants of legitimate children.    p. 366.

2.  WILLS.—*Nature of Title by Devise.*—*"Child".*—*"Children".*— A title by devise is a title by purchase and not by descent, and the words "child" and "children" ordinarily refer to legitimate children.    p. 367.

3.  BASTARDS.—*Legitimation.*—*Effect.*—*Rights Under Devise to "Children".*—Under the provisions of §3001 Burns 1908, §2476 R. S. 1881, that where a man marries the mother of an illegitimate child, and acknowledges it as his own, such child shall be deemed legitimate, the *status* of the child is fixed for all purposes, so that such child is entitled to an interest in property devised to its father for life with remainder in fee to his "children".    pp. 367, 368.

4.  BASTARDS.—*Legitimation.*—*Manner of Acknowledgment.*—An acknowledgment of a bastard child by the father may be by words, or it may be inferred from acts and conduct.    p. 368.

5.  WILLS.—*Construction.*—*Intent of Testator.*—*Designation of Devisees.*— *"Children."*— *Illegitimate Child.*— Where, on consideration of a will as a whole, in the light of the circumstances preceding and attending its execution, it appears that the testator, in a devise of land to his son for life with remainder in fee to the son's children, intended to include the son's child of illegitimate birth, such intention prevails and must be given effect.    p. 370.

6.  WILLS.—*Construction.*—*Intention of Testator.*—*Extrinsic Evidence.*—*Admissibility.*—In an action by an illegitimate child for partition of real estate, evidence that the testator had recognized plaintiff as a grandson, and had evidenced an intention of giving him a share of his estate, was properly admitted as bearing on the question of whether the testator intended to include plaintiff

in a devise of the land to plaintiff's father for life with remainder in fee to his children. p. 372.

From Clinton Circuit Court; *Henry H. Vinton,* Special Judge.

Action by Arch C. Harness against George S. Harness and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Thomas M. Ryan* and *James V. Kent,* for appellants.
*Fickle & Arthur* and *Joseph P. Gray,* for appellee.

FELT, C. J.—Appellee, Arch C. Harness, filed suit against appellants for partition of real estate, and alleged that he is the owner of the undivided one-fourth part of 159 acres of real estate, as tenant in common with appellants. Issue was formed by general denial.

The court found for appellee, commissioners were appointed, and thirty-nine acres were set off to him in severalty. Judgment of partition, from which appellants appeal, and assign as the only error the overruling of their motion for a new trial.

Appellants asked a new trial for the following reasons: (1) The judgment of the court is contrary to law. (2) The decision of the court is not sustained by sufficient evidence. (3) Error in the exclusion of certain offered testimony.

The undisputed facts show that appellee was born on July 29, 1879; that his mother at the time was not, and had not previously been married; that on February 2, 1880, after bastardy proceedings had been begun by Catherine Harvey, appellee's mother, against Samuel C. Harness, they were duly married; that said Samuel C. Harness was the father of appellee, but did not live with his said wife but a few days, and on October 1, 1880, said Catherine was, by the Cass Circuit Court, granted a divorce from said Samuel C.; that on June 16, 1881, said Samuel C. Harness was duly married to another woman, and to them were born three children, viz., appellants George S. and John O. Harness

and Margaret Dean; that William Harness was the father of Samuel C. Harness and on January 4, 1900, after the birth of all the aforesaid parties to this suit, all of whom were known to said William, he executed his last will and testament, in which he devised the real estate described in the complaint to his son, Samuel C. Harness, for life, "the fee to go to his children at his death"; that William Harness died on March 15, 1905, and his said will was duly probated in the Cass Circuit Court; that Samuel C. Harness died on May 16, 1908, leaving surviving him appellee and his said children by his last marriage; that appellee never lived in the family of Samuel C. Harness, nor was he supported by him, but lived with his mother and her people until able to care for himself; that all the real estate aforesaid was owned by said William Harness.

There is competent evidence tending to prove that said William Harness knew appellee, and the facts and circumstances connected with his birth, and the marriage of his mother and Samuel C. Harness; that said William Harness spoke of appellee as his grandson, and said he would "have something some day"; that appellee was always known by the name Harness; that Samuel C. Harness acknowledged appellee to be his own; that he frequently met him and called him his son, and appellee called him father; that said Samuel C. on several occasions said he would take his son (appellee) into his home, but he feared it might make trouble in the family; that he frequently spoke of appellee to other persons as his son, and manifested interest in his personal welfare and safety.

On this showing appellee is entitled to inherit from Samuel C. Harness, by virtue of §3001 Burns 1908, §2476 R. S. 1881, as a legitimated child, and §3000 Burns 1908,

1.   Acts 1901 p. 288, has no application to the case. The full consideration of this question in the case of *Haddon* v. *Crawford* (1912), 49 Ind. App. 551, 97 N. E. 811, makes it unnecessary further to discuss the question here.

But appellants present the further question of the right of appellee to take title under the will of his grandfather.

It is claimed that the statute by which a child born out of wedlock may inherit from the man who marries its mother, and acknowledges the child as his own, is a part of our law of descent, and in derogation of the common law; that it cannot aid the child to obtain property except by inheritance from such father. It is true the words 2. "child" and "children" ordinarily refer to legitimate children, and that a title by devise is a title by purchase, and not by descent. *Allen* v. *Bland* (1893), 134 Ind. 78, 33 N. E. 774.

It has been held in this State that the marriage of the mother and the acknowledgment by the father makes the child his heir apparent, removes from it the stain of 3. illegitimacy, and fixes the *status* of the child which cannot thereafter be changed by anything the father or mother may do. *Brock* v. *State, ex rel.* (1882), 85 Ind. 397.

In *Binns* v. *Dazey* (1897), 147 Ind. 536, 539, 44 N. E. 644, in considering the statute (now §3001, *supra*), it was said: "The thing to be established under this statute is a legal relation, and not a blood relation, between the alleged father and child. The legal relation arises out of certain facts, namely, the marriage of a man to the mother of a bastard child and the acknowledgment by the man that it is his own. * * * Indeed, the legal relation may be established between the man marrying the mother of a bastard child and such child by the acknowledgment of it as his own by the man, even where the blood relation of father and son does not exist."

In *Latshaw* v. *State, ex rel.* (1901), 156 Ind. 194, 199, 59 N. E. 471, it is said: "Under our statute a child which is begotten and born out of lawful wedlock is declared to be legitimate, where a man marries its mother and acknowledges such child as his own." The same principle is

announced in *Bray* v. *Miles* (1899), 23 Ind. App. 432, 54 N. E. 446, 55 N. E. 510.

An acknowledgment of the child by the father may 4. be by words, or it may be inferred from acts and conduct. *Bailey* v. *Boyd* (1877), 59 Ind. 292, 296.

In *Brock* v. *State, ex rel., supra,* it is said: "Our statute adopts the rule of the Roman law. * * * This 3. doctrine of the civil law has found great favor in the United States."

Schouler, Domestic Relations (4th ed.) §226, says: "In respect of the legitimation of offspring by the subsequent marriage of their parents, the civil and common law systems widely differ. By the civil and canon laws, two persons who had a child as the fruit of their illicit intercourse might afterwards marry, and thus place their child to all intents and purposes on the same footing as their subsequent offspring, born in lawful wedlock. But the common law, though not so strict as to require that the child should be begotten of the marriage, rendered it indispensable that the birth should be after the ceremony."

*Gates* v. *Seibert* (1900), 157 Mo. 254, 57 S. W. 1065, 80 Am. St. 625, is a well-considered case, and deals with a statute substantially the same as ours. The question there arose on a will, and it was decided that the word "children" included a child born and legitimated under circumstances substantially the same as in the case at bar. This case considers all the objections raised here, and reviews and distinguishes some of the cases cited and relied on by appellant. The Missouri court, among other things, said: "Our statute declares that children born out of wedlock whose parents afterwards married and the father recognizes them as his, 'shall thereby be legitimated.' The word is used without qualification or restriction. There are no degrees of legitimacy, a child is either legitimate or it is illegitimate, and whether it is one or the other depends upon whether or not it comes within the requirements of the

law to make it legitimate.'' Further on in speaking of children born in lawful wedlock and those legitimatized under the statute by marriage and acknowledgment, the court said: ''The statute has made them equal before the law and the courts cannot make them unequal.  *  *  *  'Where a person is once clearly and positively legitimate, he ought not to be bastardized by implication or construction.  This rule applies with force to this case.  The act of descents and distributions clearly make those children legitimate, and being once clearly so, if they are holden to be otherwise, it can only be by implication, argument and construction.'  Surely it would be strange if the court could in one clause of the opinion be understood to say that the children were legitimate for the purpose of inheriting in case of intestacy but bastards for all other purposes, and in another clause of the same opinion say that they were 'clearly and positively legitimate.'  *  *  *  The language instead of being susceptible of that construction seems to be clearly to the contrary, declaring the act conferring the legitimacy to be without restriction.''

In the case of *In re Wardell* (1881), 57 Cal. 484, 491, in considering a similar question to that before us, the court said: ''By the same agency the *status* of persons who had no rights of inheritance or succession under the common law, has been, under modern law, greatly changed.  *  *  *. The legal meaning of the word 'children' has, therefore, been greatly enlarged from what it was at common law.  *  *  * But by statute law, the offspring of marriages null in law, *  *  * children born out of lawful wedlock whose parents subsequently intermarried  *  *  *  and children by acknowledgment or adoption of their father  *  *  *  are all legitimate.  *  *  *  Between them and the legitimate offspring of the same parents the law has established cognatic relations, and either is as capable as the other of exercising inheritable rights.  Hence the term 'children' as used in

* * * the law of succession, must relate to *status,* not to origin—to the capacity to inherit, not to the legality of the relations which may have existed between those of whom they have been begotten. The word has, therefore, a statutory and not a common-law meaning; and its meaning includes all children upon whom has been conferred by law the capacity of inheritance."

The reasoning of the Missouri and California cases from which we have quoted is applicable to this case under the statute we are considering. We therefore hold that where a man marries the mother of an illegitimate child, and acknowledges the child as his own, the effect of the statute is to change the legal status of the child from that of illegitimacy to legitimacy; that the status of the child being thus fixed, stands for all purposes; that there are no degrees of legitimacy in this State. See, also, *Miller* v. *Pennington* (1905), 218 Ill. 220, 75 N. E. 919, 1 L. R. A. (N. S.) 773; *Power* v. *Hafley* (1887), 85 Ky. 671, 4 S. W. 683; Page, Wills §§522-525; Schouler, Wills (3d. ed.) §534; *In re Winchester* (1903), 140 Cal. 468, 470, 74 Pac. 10.

If we are wrong in the foregoing conclusions, there is another and sufficient ground for the affirmance of the judgment in this case, for if the legitimation of appellee only enabled him to inherit property from his father, as contended by appellants, this would not foreclose the question of his right under the will of William Harness, for notwithstanding the rigid rule of the common law, in reference to illegitimate born children, the intention of the testator remains the pole star in construing a will. If on a consideration of the whole instrument, in the light of the circumstances preceding and attending its execution, it appears that the testator intended to include the child of illegitimate birth, such intention prevails, and must be given effect. *Elliott* v. *Elliott* (1889), 117 Ind. 380, 20 N. E. 264, 10 Am. St. 54; *Dwight* v. *Gibb* (1911), 129 N. Y. Supp. 961, 145 App. Div. 223; *Sullivan* v. *Parker* (1893), 113 N. C. 301, 18

S. E. 347; *Thomas* v. *Thomas* (1899), 149 Mo. 426, 51 S. W. 111, 73 Am. St. 405, 415; *Smith* v. *Lansing* (1898), 53 N. Y. Supp. 633, 24 Misc. 566; *In re Morton* v. *Morton* (1901), 62 Neb. 420, 87 N. W. 182; *Tuttle* v. *Woolworth* (1908), 74 N. J. Eq. 310, 77 Atl. 684; *Johnstone* v. *Taliaferro* (1899), 107 Ga. 6, 32 S. E. 931, 45 L. R. A. 95, 104.

Here there is evidence tending to show that the testator knew the parties to this controversy, and all the facts and circumstances relating to them, when he executed his will; that his son acknowledged appellee as his own, and each addressed the other in terms showing the relation of parent and child; that his son manifested an interest in the welfare of appellee, and the testator himself spoke of him in familiar terms, calling him his grandson, and at least on one occasion evidenced an intention of giving him a share in his estate.

In view of all these facts, and other circumstances shown by the evidence, we find no reason for questioning the decision of the lower court, whether based on the intention of the testator or the effect of the statute.

Appellant cites *Thornburg* v. *American Strawboard Co.* (1895), 141 Ind. 443, 40 N. E. 1062, 50 Am. St. 334, and *McDonald* v. *Pittsburgh, etc., R. Co.* (1896), 144 Ind. 459, 43 N. E. 447, 32 L. R. A. 309, 55 Am. St. 185, in support of the proposition that appellee cannot take under the will, even if legitimate under the statute of descent. These cases deal with another statute involving the right of a father to bring suit for the death of a minor child.

It is sufficient to say that neither case comes within the provisions of the statute we are considering, for in the former the father is not shown to have acknowledged the child, and is held to be only a step-father, and in the latter case the child was illegitimate, and the father did not marry the mother.

The questions relating to the admission of evidence tending to show the testator's knowledge of appellee, and his

attitude toward him, present no available error. The

6. testimony was not admitted to change the terms of the will but to determine the intent of the testator, and as such was clearly admissible.

The record shows no available error. The decision of the lower court was clearly right.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 357. See, also, under (1) 5 Cyc. 636; (2) 40 Cyc. 1995, 1451; (3) 5 Cyc. 636; (4) 5 Cyc. 633; (5) 40 Cyc. 1451; (6) 40 Cyc. 1427. As to parol, or extrinsic, evidence to show intent of a testator in respect of whom his will is to benefit, see 115 Am. St. 588. On the question of inheritance by, through, or from illegitimate persons, see 23 L. R. A. 753.