## McKINNEY v. MINKLER et al.

### No. 13482.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 15, 1937.

Rehearing Denied Feb. 26, 1937.

274

Lightfoot & Robertson, Claude Williams, Will R. Saunders, and Nelson Scurlock, all of Fort Worth, for appellant.

C. H. Milliken, of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

Charles A. Martin was born January 20, 1895, at Fairburg, Ill. Martha Harriett Martin, obtained custody of him from an orphanage in Chicago, Ill., when he was seven years old, and took him to live with her in her home in Sullivan county, Ind., where he was kept until the summer of 1917, when he enlisted in the United States Marine Corps. He served overseas from February 8, 1918, to June 8, 1918, on which latter date he was killed in action. At the time of his death there was in force a policy of war risk insurance upon his life issued by the government of the United States in the principal sum of $10,000, in which Martha Harriett Martin was designated as beneficiary. The premiums on the policy were paid by Charles A. Martin by deductions from his salary up to the date of his death. After his death, an award of said insurance was made by the government in favor of Martha Harriett Martin, beneficiary, payable in monthly installments of $57.50 per month, as provided by the War Risk Insurance Act (40 Stat. 398, as amended). Thereafter, the beneficiary named collected the monthly installments up to the date of her death, and at that time there was an unpaid balance upon the policy, the commuted value of which amounted to the sum of $3,028, and this suit involves the rightful ownership of that balance.

On April 13, 1918, Martha Harriett Martin filed in the circuit court of Sullivan county, Ind., which is the county of her residence, a petition for the adoption of Charles A. Martin, as her child and heir at law. And on the same date an order was entered by that court reading as follows:

"Comes now Martha Harriett Martin and files her petition herein for the adoption of Charles Andrew Minkler, and in said petition it is shown that the said Charles Andrew Minkler is a male person 23 years of age on the 20th day of January, 1918; that said Charles Andrew

Minkler has no property of whatsoever kind or character; that the said Charles Andrew Minkler has neither father nor mother living.

"It is further shown by said petition that the said Charles Andrew Minkler has been in the exclusive charge and control of the Petitioner Martha Harriett Martin since the 14th day of March, 1930, and that said Charles Andrew Minkler was born at Fairburg, Illinois, on the 20th day of January, 1895; that the Petitioner obtained the custody and control of said Charles Andrew Minkler, when he was seven years of age, obtaining said custody from the Illinois Children's Home and Aid Society of Chicago, Illinois.

"It is further shown in said petition that in the year 1902, the petitioner herein prepared a petition for the adoption of said child, and presented same to the Circuit Court of Ogle County, in the State of Illinois; that since the filing of said petition it has been the belief and understanding of both the petitioner and the said Charles Andrew Minkler that a judgment and decree was duly entered and made in the said Ogle Circuit Court, adopting the said Charles Andrew Minkler to the petitioner; but it is further shown that on account of neglect and oversight of counsel, for the petitioner, in said cause in said Ogle Circuit Court, the said judgment and decree were never entered, and that the petitioner herein never discovered that fact until a very recent date, when she attempted to obtain a certified copy of the said judgment and discovered that the said judgment and decree had never been made and entered. It is further shown that both the petitioner and the said Charles Andrew Minkler believed from the year 1902, until recently, that the said Minkler was the duly adopted child and heir of the Petitioner. And that said petitioner prays a judgment and decree of this Court adopting the said Charles Andrew Minkler as the child and heir at law of Petitioner and that his name hereafter be Charles Andrew Minkler.

"And said petition is duly verified by the said Petitioner, Martha Harriett Martin.

"And the court having heard the evidence concerning the matters and things alleged in said petition, finds that the allegations of the said petition are true, and that the said Charles Andrew Minkler should be adopted as the child and heir at law of Petitioner, Martha Harriett Martin.

"It is therefore hereby ordered and decreed that the said Charles Andrew Minkler be and he is hereby adopted as the child and heir at law of the petitioner, Martha Harriett Martin, and that his name henceforth be Charles Andrew Martin; and it is further ordered and decreed that the petitioner herein pay the costs of this action, laid out and expended, taxed at $———.

"Record read and signed in open Court this April 13, 1918.
                "William H. Bridwell, Judge."

Martha Harriett Martin died October 15, 1933, leaving a last will and testament, which was duly probated in the circuit court of Sullivan county, Ind. By the terms of that will, the interest of the testatrix in the policy in question was devised to her friend, Della McKinney.

The agreed statement of facts filed here recites the following:

"At the time of his death the said Charles A. Martin had his domicile in the State of Indiana and it is agreed that the laws of the State of Indiana should govern in the distribution of his estate.

"The statutes of descent and distribution in force in the State of Indiana at the time of the death of the said Charles A. Martin applicable to the facts in this case are as follows:

" '3327. *When to parents and brothers and sisters.*—3. If any intestate shall die without lawful issue or their descendants alive, one-half of the estate shall go to the father and mother of such intestate, as joint-tenants, or, if either be dead, to the survivor, and the other half to the brothers and sisters and to the descendants of such as are dead, as tenants in common.'

" '3328. *How brothers, sisters and parents take.*—4. If there be neither father nor mother, the brothers and sisters of the intestate living, and the descendants of such as are dead, shall take the inheritance as tenants in common. If there be no brothers or sisters of the intestate or their descendants, the father and mother shall take the inheritance as joint tenants; and if either be dead, the other shall take the estate.'

"The statutes relating to adoption of heirs in force in the state of Indiana on the date of the alleged adoption of the said Charles A. Martin, are as follows:

" '913. *Petition to adopt child.*—1. Any person desirous of adopting any child may

file his petition therefor in the circuit court in the county where such child resides.

" '914. *Contents of petition, verification.*—2. Such petition shall specify—

" 'First. The name of such petitioner.

" 'Second. The name of such child; its age; whether it has any property, and, if so, how much.

" 'Third. Whether such child has either father or mother living, and, if so, where they reside. Such petition shall be verified by the oath or affirmation of such petitioner.

" '915. *Order of adoption—New name and rights.*—3. Such court, when satisfied that it will be for the interest of such child, shall make an order that such child be adopted, and from and after the adoption of such child, it shall take the name in which it is adopted and be entitled to and receive all the rights and interests in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother: Provided, however, That should such adopted child die intestate, without leaving wife or husband, issue or their descendants, surviving him or her, seized of any real estate or owning any personal property which may have come to such child by gift, devise or descent from such adopting father or mother, such porperty, so coming to such adopted child, shall, on its death, descend to the heirs of said adopting father or mother the same as if such child had never been adopted.

" '916. *Rights and duties of parties adopting.*—4. After the adoption of such child, such adopting father or mother shall occupy the same position toward such child that he or she would if the natural father or mother, and be liable for the maintenance, education and every other way responsible as a natural father or mother.'

"It is agreed that the decisions of the courts of Indiana contained in printed volumes of the reports, typewritten copies thereof or extracts therefrom shall be admissible in evidence in this case."

Charles Andrew Martin died intestate without issue and unmarried, leaving surviving him three brothers, namely, William Minkler, Silas G. Minkler, and Milo J. Frieling, and Emma Dory, a widowed sister, but leaving no surviving parent nor issue of any deceased brothers or sisters.

Mrs. Emma Dory, residing in Tarrant county, was duly and legally appointed and qualified as administratrix of the estate of Charles A. Martin, deceased, in the county court of Tarrant county, and thereafter received and collected on behalf of the estate the $3,028 from the Veterans' Administration, representing the commuted value of the unpaid balance remaining of the war risk insurance policy. But by order of the county court of Tarrant county, of date October 30, 1935, approving the final report of Emma Dory as administratrix of the estate and closing the administration, it was directed that the insurance so collected be paid over to the county clerk of Tarrant county, to be held by him as a trust fund for distribution under the further order of the court after determination of the present suit, which was instituted by the surviving brothers and Mrs. Dory, as surviving sister and as administratrix, against Mrs. Della McKinney, who resides in Sullivan county, Ind.

Recovery was sought against the defendant for the balance so collected by the administratrix on said policy.

Mrs. Della McKinney, a feme sole, named as defendant in the suit filed a pleading in which the above facts and statutes of the state of Indiana were recited, followed with these allegations:

"Your petitioner would further show to the court that the courts in Indiana in construing said statutes have held that by an adoption, another and different stirps is inserted in the family tree of the adoptive parents and that the brothers and sisters of the adopted child have no interest or connection with said stirps, and further that the estate of a person so adopted which has no ancestral quality, and therefore not governed by other or specific provisions of the statute, should be distributed according to the laws of descent and distribution; that is, that under circumstances such as exist in this case that the said Martha Harriett Martin, as the adoptive parent, inherited from her adopted son, Charles Andrew Martin just as a natural mother would have inherited from a natural son having brothers and sisters, and who died without issue.

"Wherefore, Mrs. Della McKinney prays the court that an order be entered awarding one-half of the residue of the estate of Charles Andrew Martin to her and that the administrator be directed and ordered to deliver to her such portion of said es-

tate. She further prays for a general and special relief in law and in equity."

Trial was before the court without a jury and judgment was rendered decreeing to plaintiffs title to all the funds which had been collected by Mrs. Dory, administratrix of the estate of Charles A. Martin, deceased; and from that judgment, the defendant Mrs. Della McKinney has appealed.

We quote the following from appellant's brief:

"The sole and only point to be decided by this Court is whether or not the adoptive mother of Charles A. Martin, deceased, was entitled to and did inherit one-half of the estate of the adopted son under the laws and decisions of the State of Indiana. The trial court had this case upon an agreed statement of facts and there is no controversy with reference to these facts;—thus the matter is boiled down to a general point of law as to whether the trial court rendered the proper judgment in this matter."

█ Under the World War Veterans' Act 1924 (section 303, as amended [38 U.S.C.A. § 514]), the unpaid balance on the war risk insurance policy in question at the time of the death of Mrs. Martha Harriett Martin became assets of the estate of Charles A. Martin to be distributed to his heirs in accordance with the intestacy laws of the state of Indiana, the state of his residence at the time of his death. Singleton v. Cheek, 284 U.S. 493, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923.

█ It is elementary that the adoption of a child and heir was unknown to the common law and therefore the issues involved in this case must be determined solely by the statutes of Indiana and decisions of the Appellate Courts of that state construing them. 9 R.C.L. § 8, p. 14.

Numerous decisions of the same courts have been cited in briefs of both parties to this appeal, involving the right of adopted children to take by devise or inheritance property left by adoptive parents at death, under provisions of the statutes of Indiana effective at date of such death, but in none of those cases was the right of an adoptive parent to take by inheritance property owned by an adopted child directly involved.

In the case of Davis v. Fogle, reported in 124 Ind. 41, 23 N.E. 860, 861, 7 L.R.A. 485, the Supreme Court of Indiana, in opinion dated March 11, 1890, held that the adoption of a child under section 825 of Rev. Statutes of Indiana, which is the same as section 915, copied above, did not operate to revoke a will executed by the adopting parent prior to such adoption; overruling the contention that the statute declaring such revocation if a child is born to the testator after execution of his will with no provision in the will in his favor would apply also in favor of an adopted child. In the opinion this was said:

"It is held by this court that when an adopted child dies without issue, owning real estate which came to it by inheritance from its adopting father or mother, the same shall descend on the death of the child to the adopting father or mother surviving, in preference to the natural mother. Humphries v. Davis, 100 Ind. 274 [50 Am. Rep. 788]; Humphries v. Davis, 100 Ind. [369] 370; Paul v. Davis, 100 Ind. 422.

"The court, in the case of Humphries v. Davis, supra, [100 Ind. 274] at page 282, [50 Am.Rep. 788] say: 'Not only is the conclusion which we have stated that to which cold rules of logic and the benign ones of natural equity lead, but it is also the conclusion to which the general principles both of the American law and the Roman law lead. It is a principle of both systems of jurisprudence that, in case of failure of descendants capable of taking, the inheritance shall go back to the kinsmen of the blood from which it came. Our statute fully recognizes the general principle; for it provides that when the inheritance comes from the paternal line it shall go back to the kinsmen of that blood, but when the inheritance comes from the maternal line it shall go back to the kinsmen of the mother's side.'

"These decisions go as far, it would seem, in holding the legal status of the adopted child to be the same as a natural child, as is warranted under the statute; but the conclusions are reached on broad, equitable principles, and differ very materially from the questions presented in this case. These decisions go no further than to hold that the surviving adopting father or mother inherit from the adopted child such property only as it inherited from the deceased adopting father or mother; and the statute was so amended in 1883 (Elliott's Revision, § 29) as to provide that property which may come to such adopted child, by descent, devise, or gift, from its adopting father or mother, shall, upon its

death without husband, wife, or issue surviving, descend to the heirs of such adopting father or mother, which amendment was no doubt deemed necessary to prevent the natural heirs of such adopted child from inheriting to the exclusion of the heirs of its adopting parents that which came from them, and of right ought, on the death of such child without husband or wife, issue, or descendants surviving, to descend to the heirs of the adopting parents. There is a material difference in the matter of inheritance by an adopted and natural child; also, as to the descent of property owned by them. An adopted child inherits from its natural parents, but not from the relatives of the adopting parents. The natural parent inherits all such property as the child may acquire otherwise than through the adopting parents. In the case of Humphries v. Davis, supra, 100 Ind. [274,] 283 [50 Am.Rep. 788] it is said by the court: 'It does her (the mother) no injustice to leave her with her right to such property as her child may acquire otherwise then through its adoptive parents, but it would do great injustice to permit her to secure the property acquired by her child in virtue of both its natural and adoptive rights.' "

Appellant cites the two former decisions noted in that opinion and several others of dates prior to the amendment enacted in 1883 of the former statutes relating to adoption of children, but none of them is at variance with the conclusions announced in Davis v. Fogle, supra.

Later decisions cited by appellant include Markover v. Krauss, 132 Ind. 294, 31 N.E. 1047, 1049, 17 L.R.A. 806, stressed as most strongly in point. The case involved the relative inheritable rights of an adopted child and a subsequent childless widow of the adopting father to his estate. The opinion reviews at length the statutes of inheritance and adoption of Indiana, and in reviewing the general history of such legislation said:

"A discussion of the question that is especially full, interesting, and instructive will be found in the case first above cited [Humphries v. Davis, 100 Ind. 274, 50 Am. Rep. 788]. In that case the court fully recognizes the civil law as the source to which we must look for authority, upon the ground that the power thus given one to name a person not of his blood to be the lawful inheritor of his property if he dies intestate is in the nature of a legislative

enactment of certain provisions of the Roman law. As is there said: 'It is established law that, when a rule is borrowed from another body of laws, courts will look to the source from which it emanated to ascertain its effect and force.'

"Turning, then, to the Roman law. we read: 'He who is either adopted or arrogated is assimilated in many points to a son born in lawful matrimony.' Inst. Gaius, bk. 1, § 105; Sandars, Just. Inst. 45.

" 'Adoptive children, so long as they are held in adoption, are in the position of children born to us.' Inst. Gaius, bk. 2, § 136; Hunter, Rom. Law, p. 58.

"While Justinian revised, and in many respects changed, the law relating to the adoption of heirs, it will be found that the changes made by him were in the nature of an enlargement, instead of a diminution, of the rights of the adopted child. For instance, originally the adopted child, on adoption, lost all rights in the family of his natural parents. He was no longer in any legal sense related to them, and had no interest whatever in their estate. If, thereafter, his adoptive father emancipated him, he was without a family, having no legal right in either the family of his natural or his adoptive father. One of the changes made by Justinian was to remedy this injustice. Hunter, Rom. Law, 63. After his revision, as before, the adopted child, while held in the bonds of adoption, was still in the position of a natural child, or a child born to the adopting father. Not, as is said in Humphries v. Davis, supra, that the law attempted to do the work of nature, and create a child of one's blood out of a stranger, but that the law could and did make the legal status of the one in every respect that of the other. Thus the son of the adopted son was by the law made the grandson of the adopting father, with all the legal rights incident to that relation."

However, as shown in the opinion in Davis v. Fogle, supra, limitations have been placed on much of the expressions of a general purport appearing in the opinions in Humphries v. Davis, and in the later opinion of the Supreme Court of Indiana, of date May 26, 1914, in Bruns v. Cope, 182 Ind. 289, 105 N.E. 471, 473, this was said:

"The right to acquire property by descent is a creature of the law. Donaldson v. State [182 Ind. 615] 101 N.E. 485, and authorities cited. Neither the common nor civil law canons of descent, as such, ever

obtained in Indiana. Our statutes cover the entire field of succession to a deceased intestate's property, and comprehend any conceivable case. Since the adoption of the ordinance of 1787, the right of inheritance in Indiana has been determined solely by statutory enactment. Cloud v. Bruce, 61 Ind. 171; Bruce v. Bissell, 119 Ind. 525, 22 N.E. 4, 12 Am.St.Rep. 436; Morin v. Holliday, 39 Ind.App. 201, 77 N.E. 861. As our canons of descent are fixed and positive expressions of the legislative intent, equitable rules cannot be interposed to vary their effect. ' Armington v. Armington, 28 Ind. 74; Rountree v. Pursell, 11 Ind. App. 522, 39 N.E. 747."

The cases of Harness v. Harness, 50 Ind.App. 364, 98 N.E. 357, and Cooley v. Powers, 63 Ind.App. 59, 113 N.E. 382, likewise involved the rights of inheritance of an adopted child from the adoptive parent. Appellant also stresses certain general expressions in some of the cases to the effect that the adoption creates a reciprocal relation between the parties thereto and that the right of the adoptive parent to inherit from the child in like manner as the latter ·from the former should be implied on principles of equity, especially in view of the language in the first portion of section 916, that "after the adoption of such child, such adopting father or mother shall occupy the same position toward such that he or she would if the natural father or mother." But as pointed out already, the right of inheritance by the adopting parent from the adopted child must be given solely by the statutes and cannot be based on principles of equity, and section 916 of the statutes was not discussed in Davis v. Fogle, supra, yet it cannot be assumed that it was overlooked; on the contrary, it must be presumed that the court concluded it could not be given effect as a statute of inheritance in favor of the adoptive father or mother to the estate of the adopted child. And we believe it clear that the language quoted from the first portion of that section was employed to make clear the responsibilities of such adoptive parent to the child expressed in subsequent portions of that section used in the same connection. 59 C.J. § 579, p. 979.

None of the decisions of the Supreme Court of Indiana cited in briefs filed here are directly in point on the one and only question presented. It is therefore our province and duty to construe the applicable statutes involved · as though they were statutes of Texas. 59 C.J. § 565, p. 946.

It is clear that the persons designated as "father" and "mother" in sections 3327 and 3328 of the statutes of descent and distribution mean natural parents and do not include adoptive parents. It is also manifest that section 915 does not in terms accord to an adoptive parent the right to inherit any part of the estate of the adopted child who dies intestate. And in the absence of any language employed in any other statute which reasonably can be construed as giving that right, the courts are without authority to supply the omission under rules governing statutory construction. 59 C.J. § 564, p. 944; § 569, p. 952; § 576, p. 974, and decisions there cited.

We have reached the conclusion that there is no error in the judgment from which this appeal is prosecuted, and, accordingly, it is affirmed.