WILSON *v.* BASS ET AL.

[No. 9,647. Filed January 9, 1918. Rehearing denied June 25, 1918. Transfer denied May 8, 1919.]

1. DESCENT AND DISTRIBUTION.—*"Child."—"Children."—"Descendants."—Statutes.*—The words "child," "children," and "descendants" and the like, as used in §§2990, 2991 Burns 1914, §§2467, 2468 R. S. 1881, regulating descent in certain cases, *prima facie* mean legitimates. p. 119.

2. BASTARDS.—*Inheritance.—Statute Governing. — Construction.*— Section 3000 Burns 1914, Acts 1901 p. 288, providing that illegiti-

mate children may, under certain conditions, inherit the estate of their fathers, is remedial, and should be liberally construed within its terms to effectuate the purpose of its enactment. p. 119.

3. BASTARDS.—*Acknowledgment by Parent.—Statute.—Scope and Effect.*—Section 3000 Burns 1914, Acts 1901 p. 288, providing that illegitimate children may, under certain conditions, inherit the estate of their fathers, is merely a statute of descent, and thereunder the legal status of the child is not changed from illegitimacy to legitimacy by the father's acknowledgment. p. 125.

4. BASTARDS. — *Inheritance Through Father. — Statutes.* — Under §§2990-3000 Burns 1914, §§2467, 2468 R. S. 1881, Acts 1901 p. 288, regulating descent in certain cases, an illegitimate child cannot inherit from the mother of its putative father, where the latter dies before the mother. p. 126.

From Decatur Circuit Court; *Hugh Wickens,* Judge.

Action by Clinton O. Wilson against Laura J. Bass and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Carey & Karns, Remy & Berryhill* and *William H. Remy,* for appellant.

*Will A. Yarling* and *D. L. Wilson,* for appellees.

CALDWELL, J.—A judgment was entered against appellant by reason of his refusal to plead over on the sustaining of a demurrer to his complaint. The material facts alleged were substantially as follows: There were born to Riley D. and Mahala H. Wilson, husband and wife, three children, viz., Alonzo L. Wilson, Alma Cora Wilson and appellee Laura J. Bass. Alonzo L. Wilson died in 1894. Appellant is his illegitimate son. Alonzo recognized and acknowledged appellant as his son. The former on his decease left surviving him no widow or legitimate child or children, or their descendants, and no illegitimate child or children or their descendants, save appellant as aforesaid.

In 1899 Alma Cora Wilson died intestate, the owner in fee of a certain eighty-acre tract of land in Shelby county, subject to the life estate therein held and owned by her mother. Alma Cora left surviving her no husband or father, or child or children or their descendants, but did leave surviving her her mother, Mahala H. Wilson, and her sister, appellee Laura J. Bass, who it is alleged thereby inherited the fee to said real estate, each the undivided one-half thereof. Mahala died intestate in 1914, the owner in fee of the undivided one-half of said real estate, survived by no parent or child or children except appellee Laura J. Bass. By reason of the facts it is alleged that at the death of Mahala her interest in said lands descended in equal parts to appellant and appellee Laura J. Bass, and that they are now the owners of the said land, the former of one-fourth thereof, and the latter the one-fourth plus the one-half theretofore owned by her. Prayer that title be quieted and partition made accordingly.

It seems to be conceded that under the facts alleged Mahala H. Wilson was the owner in fee of the undivided one-half of said lands. If so, it is plain that at the death of Mahala H. Wilson, her daughter, appellee Laura J. Bass, inherited at least the undivided one-half of such one-half. She inherited also from her mother the other half of such one-half, unless appellant inherited it. It follows under the facts alleged that, if appellant as the illegitimate, but acknowledged, son of Alonzo L. Wilson inherited from Mahala H. Wilson, the mother of his putative father, the one-half of the one-half interest in said lands owned by Mahala H. Wilson at her decease, this cause must be reversed; otherwise affirmed.

Sections 2990, 2991 Burns 1914, §§2467, 2468 R. S. 1881, are to the effect that the real and personal prop-
1. erty of any person dying intestate shall descend to his or her children in equal portions, and that, if any child be dead leaving a child or children, such child or children shall inherit the share that would have descended to the parent if living. The words "child," "children," "descendants," and the like, as used in such a statute, *prima facie* mean legitimates. *Truelove* v. *Truelove* (1909), 172 Ind. 441, 86 N. E. 1018, 88 N. E. 516, 27 L. R. A. (N. S.) 220, 139 Am. St. 404; *Jackson* v. *Hocke* (1908), 171 Ind. 371, 84 N. E. 830; *McDonald* v. *Pittsburgh, etc., R. Co.* (1896), 144 Ind. 459, 43 N. E. 447, 32 L. R. A. 309, 55 Am. St. 185; *Brisbin* v. *Huntington* (1905), 128 Iowa 166, 103 N. W. 144, 5 Ann. Cas. 931; 3
2. R. C. L. 774. It follows that on the decease of Mahala H. Wilson her interest in the lands involved here descended to appellee Laura J. Bass, to the exclusion of appellant, unless the cited statutes are modified and controlled by some other statute as applied to the facts of this case. Appellant points to §3000 Burns 1914, Acts 1901 p. 288, as such a modifying statute. It reads in part as follows: "That the illegitimate child or children of any man dying intestate and having acknowledged such child or children during his lifetime as his own, shall inherit his estate, both real and personal, and shall be deemed and taken to be the heir or heirs of such intestate in the same manner and to the same extent as if such child or children had been legitimate. * * * Provided, That the provisions of this act shall not apply where the father of the illegitimate child, at his death, had surviving legitimate children or de-

scendants of legitimate children." It was a harsh rule of the common law that an illegitimate child had no inheritable blood. Such statutes as §3000, *supra,* are intended to ameliorate the condition of such unfortunates as it existed at common law. They are therefore remedial in nature, and should be liberally construed within their terms to effectuate the purpose of their enactment. *Morin* v. *Holliday* (1906), 39 Ind. App. 201, 77 N. E. 861; *Goodell* v. *Yezerski* (1912), 170 Mich. 578, 136 N. W. 451, 40 L. R. A. (N. S.) 516; *Van Horn* v. *Van Horn* (1899), 107 Iowa 247, 76 N. W. 846, 45 L. R. A. 93; *Brisbin* v. *Huntington, supra;* 3 R. C. L. 773.

It will be observed that the language of §3000, *supra,* is to the effect that the illegitimate child or children shall inherit the estate of the acknowledging father under the circumstances named. The statute by its terms does not include within its beneficial operation the child or children of such an illegitimate. The courts, however, in construing such statute do not hold it down to its seemingly literal provisions under all circumstances. Thus the facts involved in *Morin* v. *Holliday, supra,* cited by appellant as conclusive here, were briefly and in part as follows: The intestate, John Cline, had acknowledged as his children two illegitimates, John Holliday and Clara Morin. The latter died before the decease of John Cline, leaving several children, who also had been acknowledged by John Cline as his grandchildren. John Holliday died after the decease of John Cline, leaving heirs. Other facts necessary to invoke the application of §3000, *supra,* existing, this court, applying the rule of liberal construction, held that the children of Clara Morin, in common with John Holliday, inherited the

lands of which John Cline died the owner, and John Holliday having died intestate subsequently to the death of his putative father, his heirs and such children of Clara Morin held and owned such lands in common. The Morin case subsequently received the approval of the Supreme Court by the denial of the transfer.

But *Truelove* v. *Truelove, supra,* is authority in effect that the rule of liberal construction must be applied within the terms of such a statute, rather than to extend its terms to cases not embraced by its provisions. Thus, in that case Caroline Coats died intestate owning lands in fee, leaving surviving her no parent, husband or descendants. Caroline's mother was the mother of two legitimate children, said Caroline and Timothy O. Truelove, and also two illegitimate sons. Caroline left surviving her her brother, Timothy, and also the children of the two illegitimate sons of her mother, both of which sons died before the death of Caroline. The question before the court was whether Timothy inherited from Caroline the lands involved to the exclusion of the children of such illegitimates, or whether such children as heirs of Caroline through their respective fathers inherited an interest therein. The court remarked in substance that, had Caroline's mother and the three sons of the latter survived Caroline, the mother and Timothy would have inherited the land on Caroline's decease under the provisions of §2992 Burns 1914, §2469 R. S. 1881, to the exclusion of the illegitimate sons, since, as we have said, the words "child" and "children" under that section *prima facie* refer to legitimates. The mother, however, and also the two illegitimates, being dead, the latter leaving children, the solution

of the involved question. whether such children in common with Timothy inherited Caroline's lands invoked a construction of §2998 Burns 1914, §2474 R. S. 1881, which is as follows: "Illegitimate children shall inherit from the mother as if they were legitimate, and through the mother, if dead, any property or estate which she would, if living, have taken by gift, devise, or descent from any other person." The court in holding that the children of such illegitimates did not inherit under that section said: "Section 2998, supra, while it enables the illegitimate child to inherit the property its mother would have taken if living, does not by its terms grant to the child of such illegitimate child such right in case said parent is not living, and the terms thereof cannot be extended so as to give such right."

Jackson v. Hocke, supra, also is an authority that there is a limit to the force of the rule of liberal construction when applied to statutes enacted to remove some of the diabilities of illegitimates at common law.

The court in the Morin case supports its conclusion through a process of reasoning by analogy from the statute providing for the adopting of children. §870 Burns 1914, §825 R. S. 1881. This statute contains a provision that the adopted child shall "be entitled to and receive all the rights and interest in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother," while the similar language contained in the statute under consideration is to the effect that the acknowledged child under the circumstances prescribed by the statute shall inherit the estate of the acknowledging intestate "and shall

be deemed and taken to be the heir  *  *  *  of such intestate in the same manner and to the same extent as if such child  *  *  *  had been legitimate.'' The court then develops from the authorities that the adopted child becomes the stirps or stock of a new line of inheritance, and that, on the decease of the adopted child before the decease of the adopting father, the surviving children of the former inherit from the latter by representation from his deceased intestate. *Paul* v. *Davis* (1885), 100 Ind. 422. The court then reasoning from the similarity in language of the two statutes supports its conclusion that the child of the acknowledged illegitimate may inherit from the acknowledging putative father of the illegitimate, under the circumtsances of the Morin case. However, if the line of argument from analogy be applied to the facts of this case, the conclusion of the trial court here that appellant, an illegitimate, did not inherit from the mother of his acknowledging father, who died before the decease of his mother, is thereby supported, since it is held that an adopted child does not inherit from the father or mother of the adopting parent. See the following: *Bray* v. *Miles* (1899), 23 Ind. App. 432, 54 N. E. 446, 55 N. E. 510; *Davis* v. *Fogle* (1890), 124 Ind. 41, 44, 23 N. E. 860, 7 L. R. A. 485; *Wyeth* v. *Stone* (1887), 144 Mass. 441, 11 N. E. 729. See, also, *Warren* v. *Prescott* (1892), 84 Me. 483, 24 Atl. 948, 30 Am. St. 370, 17 L. R. A. 435, and note; *Hockaday* v. *Lynn* (1906), 200 Mo. 456, 98 S. W. 585, 118 Am. St. 672, 9 Ann. Cas. 775, 8 L. R. A. (N. S.) 117, and note; *Merritt* v. *Morton, Admx.* (1911), 143 Ky. 133, 136 S. W. 133, 35 L. R. A. (N. S.) 139, and note; *Barnes* v. *Allen* (1865), 25 Ind. 222; 1 R. C. L. 621.

Such conclusion of the trial court is thus supported on the assumption that the legal relation created between a putative father and the acknowledged illegitimate by the provision of §3000, *supra,* is as close and intimate as that created between an adopting parent and an adopted child by the provisions of §870, *supra.* However, a comparison of the following discloses that the latter legal relation is the more intimate: *McDonald* v. *Pittsburgh, etc., R. Co., supra; Citizens St. R. Co.* v. *Cooper* (1899), 22 Ind. App. 459, 53 N. E. 1092, 72 Am. St. 319; *Harness* v. *Harness* (1911), 50 Ind. App. 364, 98 N. E. 357; *Citizens' St. R. Co.* v. *Willoeby* (1896), 15 Ind. App. 512, 43 N. E. 1058; *Cooley* v. *Powers* (1916), 63 Ind. App. 59, 113 N. E. 382; 1 R. C. L. 610 *et seq.; Omaha Water Co.* v. *Schamel* (1906), 147 Fed. 502, 78 C. C. A. 68.

It is argued in behalf of appellant that where an illegitimate child is acknowledged, under the provisions of §3000, *supra,* he becomes a legitimate child with full right of inheritance, in the absence of other legitimate children or their descendants, and hence that appellant in this case inherited from the mother of his putative father to the same extent that he would have inherited had he been born in lawful wedlock. We do not believe that the statute is reasonably susceptible of such a construction. The statute by its terms seems plainly to distinguish between an illegitimate and a legitimate child, extending to the former a right to inherit from the putative father only, under certain circumstances, in case of the absence of legitimate children. Thus, the language is to the effect that the illegitimate child of any man dying intestate shall inherit his estate to the same extent as if such child had been legitimate, provided

that the act shall not apply where the father of the illegitimate at his death had surviving a legitimate child. A statute seems to recognize the illegitimate as illegitimate after acknowledgment.

A comparison of §3001 Burns 1914, §2476 R. S. 1881, with §3000, *supra,* confirms us in such conclusion. The former is as follows: "If a man shall marry the mother of an illegitimate child and acknowledge it as his own, such child shall be deemed legitimate." That section in substantially its present form has been in force since 1831. See R. S. 1831 p. 208; R. S. 1843 p. 438; R. S. 1852 p. 249. Under that and similar statutes the status of the child is changed from illegitimacy to legitimacy. *Harness* v. *Harness, supra; Haddon* v. *Crawford* (1912), 49 Ind. App. 551, 97 N. E. 811; *Brock* v. *State, ex rel.* (1882), 85 Ind. 397; *Bailey* v. *Boyd* (1877), 59 Ind. 292; *Harvey* v. *Ball* (1869), 32 Ind. 98; *Latshaw* v. *State, ex rel.* (1901), 156 Ind. 194, 199, 59 N. E. 471; *Binns* v. *Dazey* (1897), 147 Ind. 536, 44 N. E. 644; *Blythe* v. *Ayres* (1892), 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40; *Ives* v. *McNicholl* (1898), 59 Ohio St. 402, 53 N. E. 60, 43 L. R. A. 772, 69 Am. St. 780; *Leonard* v. *Braswell* (1896), 99 Ky. 528, 36 S. W. 684, 36 L. R. A. 707; *Adams* v. *Adams* (1891), 154 Mass. 290, 28 N. E. 260, 13 L. R. A. 275, and note; 3 R. C. L. 740, 774.

The predecessor of §3000, *supra,* was enacted in 1853 (§2630 Burns 1894). For purposes of the question we are considering, such original section **3.** was not materially different from §3000, *supra;* that is, if under the latter an illegitimate child involved was legitimated, so was he under the original section, and *vice versa.* When such original section, as well as §3000, *supra,* was enacted, §3001, *supra,*

was in force. It would therefore seem that if by §3000 and its predecessor the legislature intended to change the status of the illegitimate to the same extent as by the application of §3001; that is, to a legal status of legitimacy, such legislative purpose could have been much more easily accomplished by an amendment, rather than by a supplemental enactment. Section 3000, *supra,* and similar enactments are merely statutes of descent. Under such a statute the legal status of the child is not changed from illegitimacy to legitimacy. The child remains illegitimate after the acknowledgment. *McDonald* v. *Pittsburgh, etc., R. Co., supra; Brisbin* v. *Huntington, supra; Davenport* v. *Davenport* (1906), 116 La. 1009, 41 South. 240, 114 Am. St. 575, 579; 3 R. C. L. 774.

We have indicated above that such words as "child," "children," "descendants," and the like, as used in such statutes as §§2990, 2991, *supra,*
4.  *prima facie* refer to legitimates. It is therefore evident that appellant here did not inherit from Mahala H. Wilson on her decease as her legitimate descendant; that is, *prima facie,* after the application of §3000, *supra,* appellant does not come within the beneficial provisions of §2991, *supra.*

As we have indicated, the predecessor of §3000, *supra,* was enacted in 1853. The latter section in 1901 (Acts 1901 p. 288). At each of these times §2998, *supra,* was in force, it having been enacted in 1852. A similar statute had been in force for many years (see R. S. 1831 p. 208). We have hereinbefore set out §2998. Under such statute it is held that an illegitimate inherits not only from, but through, the mother. *Parks* v. *Kimes* (1885), 100 Ind. 148; *Croan* v. *Phelps* (1893), 23 L. R. A. 753, note, subject, how-

ever, to construction. See *Jackson* v. *Hocke, supra.* Section 2998, *supra,* it will be observed, contains the express words, "through the mother," by virtue of which an illegitimate may inherit from an ancestor through the natural mother. This section, as we have said, was in full force when §3000, *supra,* and its predecessor were enacted. In such latter sections equivalent words are not found; thus §3000, *supra,* contains no language expressly to the effect that an illegitimate child may inherit by representation through the putative father. The omission of any such provision is at least significant, especially in view of the language of §2998, *supra.* The language of §3000, *supra,* is to the effect that the illegitimate may inherit the putative father's estate and be deemed and taken to be his heir, under the circumstances outlined. We are therefore forced to the conclusion that appellant on the decease of the mother of his putative father, intestate, inherited no part of her estate. See the following. *Hicks* v. *Smith* (1894), 94 Ga. 809, 22 S. E. 153; *Safford* v. *Houghton's Estate* (1876), 48 Vt. 236. See, also, *Merritt* v. *Morton, Admx., supra,* and note.

Judgment is affirmed.