IN RE ESTATE OF DALLAS SCHICK; MARTHA SCHICK ET AL. *v.* ROBERT SCHICK.

[No. 1270A275. Filed October 20, 1971. Rehearing denied December 3, 1971. Transfer denied April 5, 1972.]

*Charles G. Bomberger, Gilbert F. Blackman, Friedrich, Bomberger, Tweedle & O'Connor,* of Hammond, for appellant.

*Kenneth D. Reed,* of Hammond, for appellee.

LOWDERMILK, J.—This appeal comes to us from a judgment of the Lake Superior Court, Room No. 1. The case was tried on a petition to determine heirship of the decedent, Dallas Schick. The trial was to the court without a jury and the court found that the heirs of the decedent, Dallas Schick, were Martha Schick, surviving spouse, and appellee, Robert Schick, "son", the only claimants, to share equally in the proceeds of the estate. The only controversy before this court is the judgment that appellee, Robert Schick, is entitled to share in the estate, as the judgment as to Martha Schick has become final and is not in question.

Dallas Schick died intestate, a resident of Lake County, Indiana, on January 13, 1968, at the age of 74 years. His widow, Martha Schick, petitioned to open an estate, which was done, and the appellant bank was appointed and qualified as Administrator.

Afterward appellee Robert Schick, born November 5, 1919, as Robert Engel Frietag, an illegitimate child, notified the Administrator that he claimed to be an heir. As a result, the Administrator filed its petition in the estate to determine heirship and this was followed by a similar petition by Robert Schick. The issues of the two petitions were joined and merged into a pre-trial order in which Robert Schick asserted that he was "the son, either adopted or natural, of Dallas Schick."

The trial court heard the evidence and found that all persons who should have been notified were duly notified of the

hearing and that decedent Dallas Schick died on January 13, 1968, a resident of Lake County, Indiana, and that he left surviving the following heirs and no other, namely, Martha Schick, surviving spouse, and Robert M. Schick, son.

A decree on this finding was ordered in compliance with the finding, awarding each heir one-half of the estate.

There were many marriages and divorces that complicated the determination of the heirship of Dallas Schick; however, the court did not specify whether it found Robert Schick the adopted son, the legitimate son, or the illegitimate son of Dallas Schick.

The motion to correct errors was timely filed and was over-ruled on September 22, 1970, and the record for the appeal was then timely filed with the Clerk of this court.

The specific errors assigned in the motion to correct errors and relied upon by the appellants are as follows:

"2.  The decision of the court is not supported by suffi-cient evidence, but in fact is contrary to the evidence and contrary to law.

"6.  The decision of the court in finding Robert Schick an heir is not supported by sufficient evidence from all the necessary elements of Robert Schick's claim of heirship.

"7.  The decision of the Court in finding Robert Schick an heir is contrary to the evidence.

"8.  The decision of the court finding Robert Schick an heir is contrary to law.

"9.  The decision of the court in finding Robert Schick an heir is not supported by sufficient evidence or is contrary to the evidence."

All other specifications have been withdrawn or waived.

Appellants choose to discuss the specifications together un-der each of the propositions of argument.

On July 2, 1913, the decedent, Dallas Schick, in Centerville, Iowa, married a woman identified in various parts of the records as Bernice Park Schick, Bernice Park Stiles, and

Bernice Cave. This court, like the appellants, will refer to her as "Bernice".

Bernice and Dallas were first divorced on April 2, 1916. One child had been born to that marriage, which died within a year of its birth.

On June 4, 1917, Dallas Schick married one Cloa White in Centerville, Iowa, but they were divorced on December 6, 1922. During this time, and on December 1, 1918, Bernice married one Fayette E. Stiles, which marriage terminated in divorce on September 5, 1923.

In November, 1919, Bernice and Fayette Stiles obtained a baby boy, approximately one week old, born on November 5, 1919, to an unwed mother, Blanche Frietag. This unfortunate baby was named Robert Engel Frietag and is one and the same as the appellee herein, Robert Schick.

Dallas Schick being married between the dates of June 4, 1917, and December 6, 1922, to one Cloa White and Robert Schick having been born on November 5, 1919, raises the presumption that Dallas Schick was not the actual father of Robert Schick. Indiana Law Journal, Vol. 38, 1960-61 Edition, p. 163 at p. 181, on the matter of the recognized natural child, states as follows:

> "* * * Even though the parents of an illegitimate child have never married, the child may acquire certain rights of inheritance *if his parents were capable of marriage at the time he was born,* and if they subsequently recognize him as their child according to the procedure required by the civil code." (Our emphasis.)

As we have heretofore stated in this opinion, it would have been impossible for there to have been a marriage between Robert Schick's purported parents at the time he was born and therefore a subsequent recognition of him as their child would avail the child Robert Schick nothing, as Dallas Schick was incapable of marriage to Blanche Frietag, the child's natural mother, at the time he was born, as he was already married to another woman.

The briefs are each silent as to whether or not Dallas Schick knew Blanche Frietag and, we have, in a search for the truth, read the transcript from cover to cover and found no place therein where Dallas Schick ever knew or was acquainted with or had access to Blanche Frietag.

Bernice and Fayette E. Stiles signed Articles of Adoption for the adoption of Robert Engel Frietag on January 18, 1920, and the natural mother, Blanche Frietag, on February 2, 1920, also signed the petition for adoption. The Articles provided for the change of the baby's name to Robert Miles Stiles. *The Articles of Adoption were not recorded in Iowa, the situs of the adoption, until May 11, 1946.*

Apparently, the adoption of this child was not the tie that bound and when Robert Engel Frietag (Robert Schick) was approximately two and one-half years old, Bernice left Stiles in Des Moines and took Robert to Centerville, Iowa.

Afterward, while living in Des Moines, she divorced Stiles and remarried Dallas Schick.

In about 1925 Bernice again left Dallas Schick, taking Robert with her. Thereafter, Bernice and Dallas were divorced in Iowa on February 17, 1926.

Apparently the animosity between Bernice and Dallas cooled down, for shortly thereafter Dallas came to Hammond, Indiana, and Bernice, bringing Robert with her, joined him in Hammond. She ran a rooming house and lived with Dallas Schick and Robert, but they overlooked the requirement that they should be man and wife and neglected to remarry, but continued to live together, rearing Robert and holding him out to the world as their son, under the name of Robert Miles Schick. Dallas supported Robert and represented to the public that Robert was his son.

Tranquillity between the parties seemed to be no better living without the benefit of wedlock than it did when they were duly married, and then, in 1931-32 Bernice again left Dallas, taking Robert with her, to Rockford, Illinois, where

she, in 1934, was married to one Harry Cave. Robert continued to visit Dallas on vacations and at other times.

Shortly after World War II Bernice admitted to Robert, for the first time, that she was not his real mother. Robert then met Bernice and Fayette Stiles in Des Moines, Iowa, in 1946, to check his birth and adoption records. At this time, the original Articles of Adoption, executed in 1920, were recorded in Iowa, and Robert Schick received various birth certificates.

At no time was Robert Schick adopted by Dallas Schick.

After discovering the identity of his real mother Robert wrote Dallas, in 1946, after returning from Des Moines, a letter, wherein he said that he had most everything straightened out and that he had a birth certificate; that the adoption papers had been lost years ago and never had been recorded. These papers were found in an old lawyer's office, where Stiles had left the papers when he filed suit for divorce to keep from paying any alimony. In the letter he further discussed his problem with changing his name and told Dallas Schick if he did not mind he would leave his name as was and asked him what he thought about it.

In 1941 Dallas Schick married appellant Martha Schick, which parties lived together until the marriage was terminated by his death in 1968. During the period of this marriage Martha corresponded with Robert and his wife, often addressing them as "Son and family", "children", or "Bob and family" and referred to his children as "grandchildren". Martha did the writing, as Dallas could neither read nor write, except to write his own name.

Appellee relies on the adoption statutes of the State of Iowa and we must, therefore, discuss these statutes and the construction thereof by the Iowa courts. At the time of the execution of the Articles of Adoption in Iowa there was no statute in that state permitting adoption of adults. The ques-

tion is whether Robert Schick, by filing the original Articles of Adoption on May 11, 1946, after he had attained his majority and at a time when Fayette Stiles, one of the adopting petitioners, who was married to his purported adoptive mother, Bernice, and who had joined in the application for adoption, was divorced from Bernice, validated the purported adoption of Robert when he was just a baby and which adoption papers were not recorded as required by the Iowa statute.

Section 636.46 of the Iowa Code, referring to illegitimate children, says:

> "They shall inherit from the father when the paternity is proven during his life or they have been recognized by him as his children; but such recognition must have been general or notorious or else in writing."

The case of *McCollister* v. *Yard, et al.* (1894), 90 Iowa 621, 57 N.W. 447, decides that under the old Iowa law, where only a minor could be adopted, that that law did not apply to the adoption of a minor where the minor attained his majority before the adoption papers were recorded. The case holds, further, that the recording of the Articles of Adoption are a necessary requisite to the completion of the adoption proceedings.

In *McCollister, supra,* one Thomas Hill entered into a deed of adoption formally adopting plaintiff. The said deed was delivered and duly recorded; and it is conceded that the same is in all respects regular, but it was not recorded until plaintiff, by marriage, had reached her majority, but was recorded during the lifetime of the adopting parents. Said Thomas Hill died testate, owning a large amount of land devised to his wife by will, if she survived; however, she predeceased him and they had no issue. Thomas Hill's wife had parents living at the time of her death who had issue and they were contesting the claim of Mary E. McCollister to the estate,

Mary E. McCollister claimed the property by virtue of her adoption by Thomas Hill and as his heir. Defendants claimed the property as heirs of Eliza B. Hill.

The court specifically stated that the material question in that case as concerns the plaintiff is "Was she legally adopted by Thomas Hill?"

The only question left touching the adoption is that the instrument of adoption was not filed for record until after plaintiff had attained her majority. Adverse parties contended that the adoption was never completed.

The court, in the *McCollister* case, in discussing *Tyler* v. *Reynolds,* 53 Iowa 146, 4 N.W. 902, said:

"* * * It was held that the right of inheritance 'was a purely statutory right, and is therefore arbitrary, absolute, and unconditional. Nevertheless, the provisions of the statute must prevail, although to do so, in some instances is inconsistent with our views as to what constitutes natural rights, or justice and equity. Therefore, a child by adoption cannot inherit from the parent by adoption unless the act of adoption has been done in strict accord with the statute. The statutory conditions and terms are that the written instrument must be executed, signed, acknowledged and filed for record. When this is done, the act is complete. * * * No rights were acquired until this was done, and neither was bound until then.'"

Other cases were cited corroborating this law. The court then said:

"Now, by the express terms of the statute, adoption is not completed until the instrument of adoption is executed, acknowledged and filed for record. Until all these things are done, there is no adoption. It matters not that some of the requisites of the law are complied with, if others are ignored. A compliance with all is essential to fix the status of the parties as parent and child by adoption. Now, if, as we have seen, no one but a minor can be adopted, and if adoption can only be accomplished by the performance of certain acts, it follows that these acts must be performed, and the relations of the parties, as parent and child by

adoption, fixed and established, during the period in which the subject of the adoption is capable, under the law, of being adopted. In other words, all the acts necessary to effect an adoption must be done during the minority of the child sought to be placed in this new legal relation. It seems to us that any other holding would not only be a clear departure from the requirements of the statute, but would, in effect, make the adoption of a child a matter largely resting in the court, without statutory restraint. Thus, if we say that an adoption is complete where the article, though executed during the minority of the child, is not filed until afterwards, why may we not properly hold that it would also be effectual if the article of adoption related to one who, at the time it was entered into, was an adult? Now, when the article in this case was filed,—when one of the steps essential to an adoption was taken,— plaintiff was in law an adult. She was not then capable of being adopted, under the statute. For five years she had ceased to be a subject of adoption. No one, then, had a right to bind her by an article of that character, or to change her legal relations in that manner. Not then being capable of being adopted under the statute, acts relating thereto, which had been done when she was a proper subject for adoption, but which were incomplete, could not be completed, and thus rendered effectual, after she had attained her majority. After she had passed the period of minority, she was not within either the wording or spirit of the statute providing for the adoption of minors. We see no escape from the plain provisions of the law, and we discover nothing which would justify us in holding that, when the law provides that a minor may be adopted by complying with certain prerequisites, either the letter or spirit of the law is satisfied by the performance of some of the requirements after the subject of the adoption has ceased to be such a person as the statute renders capable of adoption."

It is the opinion of this court in the case at bar that the adopting parent, Fayette Stiles, when he left the adoption papers with a lawyer to remain in his care indicated his intention not to adopt the appellee Robert Schick.

In 1927, when appellee was still a minor, eight years of age, the Iowa Code was amended so as to permit the adoption of adults. It must be remembered that appellee was an

adult when he found the papers and it was he who completed the original record by having them recorded.

The fact that the Iowa Legislature enacted a statute permitting the adoption of adults after the pretended adoption of Robert Schick does not make valid the petition for deed of adoption prepared by Fayette Stiles and Bernice Stiles, his wife, and not recorded of record as required by the statute when Robert was a minor. For him to have been adopted as an adult the petition would have had to have complied with the statute authorizing the adoption of adults. Such petition must have been duly executed after the statute permitting the adoption of adults was in full force and effect in the State of Iowa. In our opinion, Robert Schick was not adopted by Bernice and Fayette Stiles.

The second issue raised in this cause was whether Dallas Schick acknowledged Robert as his illegitimate son under Iowa law and therefore whether such Iowa law fixed the status of Dallas and Robert so as to make permanent Robert's legitimacy.

This court has heretofore determined that the adoption by the Stiles', which was recorded by Robert after he became an adult, was of no effect and a nullity. If Robert had been validly adopted, such adoption would have made Fayette Stiles his adoptive father. Dallas could not then affect, by acknowledgment or otherwise, the relationship between the adoptive father and Robert. In other words, Robert's right to inherit by application of the Iowa statute concerning inheritance by illegitimate children precludes a valid adoption by Bernice and Fayette Stiles.

The Iowa statute provides that an illegitimate child generally and notoriously acknowledged inherits from the father who so acknowledges. Appellee contends that this statute is more than a mere statute of inheritance for it fixes the relationship of the parties and is a legitimation statute as well. He therefore contends that since Iowa law

fixed the relationship of Dallas and Robert, Robert became legitimate for all purposes in all forums and that Indiana, under appropriate Conflicts principles, must give full faith and credit to Robert's Iowa status. Appellee notes further that such comity furthers the public policy in fostering legitimacy where possible.

To the contrary, appellant states that the Iowa statute is one of inheritance only and is applicable only upon the death of the party from whom inheritance is claimed. It fixes or vests no rights. Appellant argues that adoption of appellee's contention to the effect that Iowa's inheritance statute fixes "indelibly" the status and relationship of the parties would be to deny the right of the Indiana Legislature to change the rights of inheritance in such cases. Quite clearly, says appellant, this is not true, since in 1954 we did, in fact, change and alter many rights of persons with reference to inheritance, including the rights of illegitimate children. (Prior to 1954, illegitimate children could inherit from the natural parent after simple acknowledgment, while after 1954 acknowledgment *and* marriage to the natural mother are required.)

This court is favorable toward appellee's position and furtherance of legitimacy wherever possible, and further tends to agree that inheritance statutes with reference to illegitimate children set forth not only expectancies but declare circumstances and essentials for legitimizing illegitimate childern. We are of the opinion it would be better for the statutes to specifically state that acknowledgment, et cetera, constitutes "legitimation of the child" as well as "the right to inherit from the natural parent." Failure of the statutes to include the dual effect, however, does not mean that the child remains illegitimate even though with the right of inheritance.

Such view may be a modern and enlightened one, but it is this court's superficial impression that the prevailing view, as indicated by the Indiana Law Journal article, the law of

Iowa in interpreting its own statute construed in the *Van Horn* case, *infra,* is identical to the one involved in the case at bar, and the law of Indiana, as indicated in *Wilson* v. *Bass* (1918), 70 Ind. App. 116, 118 N. E. 379, holds such statutes to be one of succession, i.e., inheritance, rather than statutes of legitimation. If such be the current law and is to remain such, those statutes do not alter the legal status of the child.

The court said, in *Wilson* v. *Bass, supra:*

"* * * 'If a man shall marry the mother of an illegitimate child and acknowledge it as his own, such child shall be deemed legitimate' * * * Under that and similar statutes the status of the child is changed from illegitimacy to legitimacy. [Citing cases.]"

And, further, the court said :·

"* * * It would therefore seem that if by § 3000 and its predecessor the legislature intended to change the status of the illegitimate to the same extent as by the application of § 3001; that is, to a legal status of legitimacy, such legislative purpose could have been much more easily accomplished by an amendment, rather than by a supplemental enactment. Section 3000, *supra,* and similar enactments are merely statutes of descent. Under such a statute the legal status of the child is not changed from illegitimacy to legitimacy. The child remains illegitimate after the acknowledgment."

The Iowa case of *Van Horn* v. *Van Horn* (1899), 77 N. W. 846, is a proceeding to establish plaintiff's right as an illegitimate son to inherit the property, real and personal, of one Peter Van Horn who died intestate in Howard County, Iowa, in 1895. The deceased was never married and the defendants are his brothers and sisters. In answer to plaintiff's claim defendants made a general denial and further pleaded that at the time of the plaintiff's birth, and for many years thereafter, both he and his putative father were residents of the State of New Jersey, and that by the laws of that state in force prior to and since 1854 there was no provision whereby an illegitimate child may inherit from his father. Plaintiff's

demurrer to this affirmative plea was sustained and the cause tried on the issue tendered by the general denial, resulting in a decree for plaintiff, and defendants appealed.

Appellee was born in New Jersey to Sarah Ann Scales, who died at the age of 31. When appellee was three years old Peter Van Horn, deceased, moved to Howard County, Iowa, where he resided most of the time until his death.

> The Supreme Court of Iowa said:
> "* * * Appellee claims that Peter Van Horn was his father, and that the deceased recognized him as his son while both lived in the state of New Jersey, both orally and in writing, and that he is entitled to inherit as such. At common law a bastard could not inherit from either parent. He was regarded as *nullius filius*, or *filius populi*. This rule has been changed by statute in this state, which provides that 'they [illegitimate children] shall inherit from the father whenever the paternity is proven during the life of the father, or they have been recognized by him as his children, but such recognization must have been general and notorious or else in writing.' Code 1873, § 2466. They may always inherit from the mother. * * * It is said that recognition of plaintiff by the deceased in the state of New Jersey, which state has no statute allowing an illegitimate to inherit, does not give plaintiff the right of succession; and several cases are cited in support of the conclusion. None of them, however, seem to be exactly in point. * * * *Smith* v. *Derr's Adm'rs*, 34 Pa. St. 126, holds that a decree of a foreign state legitimatizing an illegitimate child was not binding upon the courts of Pennsylvania in determining the right of succession or descent of real property situated in that state * * *"

The court, speaking further, said:

> "In *Blythe* v. *Ayres* (Cal.) 31 Pac. 915, Garoutte, J., writes an able opinion covering the entire ground, and he concludes that statutes similar to the one upon which plaintiff relies are statutes of descent, and that the domicile or status of the child and the extraterritorial operation of state laws are wholly immaterial matters. And this, it seems to us, is the correct doctrine. It is written on the hornbook of the law that as a general rule, the succession of personal property is regulated and governed by the law

of the owner's domicile, while that of real property is governed by the law of the place where it is situated. * * * The statute under consideration is undoubtedly a statute of descent, and must, like other statutes in derogation of the common law, be liberally construed, with a view to promote its objects and assist the parties in obtaining justice. Code 1873, § 2528. It is quite immaterial, then, where the acts of recognization relied upon occurred; for, if plaintiff brings himself within the terms of the statute, he is the legal heir of the deceased, and entitled to inherit."

The court, in speaking further, said that the sole inquiry in that case was whether appellee was entitled to inherit the real and personal property situated in Iowa under the facts in the evidence, and concluded that the laws of New Jersey were wholly immaterial, and that the trial court was right in sustaining plaintiff's demurrer. The court then said:

"* * * What, then, must plaintiff do in order to establish his heirship? This query is answered by turning to the statute, which says, in substance, that paternity must be proven during the lifetime of the father, or that the father must have recognized him as his child, either in writing or generally and notoriously. * * *"

The record shows, further, that soon after going to Iowa the deceased spoke to several people about having an illegitimate child in New Jersey and so described him as to leave no doubt that he referred to plaintiff. As late as 1895 the deceased spoke of plaintiff as his son to his neighbors in Iowa. Defendants introduced evidence tending to show that deceased denied that plaintiff was his son, and also to the effect that it was not a notorious fact in the community in which he lived. The court held that the plaintiff was the son of Peter Van Horn and that the deceased's recognition of him as such was general and notorious within the meaning of the terms as given by that court and found that the plaintiff brought himself within the letter of the statute and was entitled to inherit.

In *Phillips* v. *Townsend, et al.* (1945), 223 Ind. 561, 62 N.E. 2d 860, the single question presented was: May appellant, an illegitimate son, acknowledged by his father, inherit a share of the estate of the father's sister who survived the father? It was decided against appellant's claim in *Wilson* v. *Bass, supra,* and other cases. The Supreme Court held:

> "* * * We are satisfied with the conclusion reached in the two Appellate Court cases. [cited] It has become a rule of property under the doctrine of *stare decisis.* * * *"

This court fully and completely agrees with the last sentence of that opinion, which states: "If the statutes of descent so construed are too harsh in the light of modern opinion concerning the rights of illegitimates the remedy is with the legislature."

The interest of an acknowledged illegitimate child in a decedent's estate is contingent upon his survivorship of the decedent and is governed by the law applicable to intestate succession by illegitimates in force and effect at the time of decedent's death. *Thacker et al.* v. *Butler, Admr., et al.* (1963), 134 Ind. App. 376, 184 N. E. 2d 894.

Appellants do not dispute Robert's illegitimacy. Dallas (the purported father) had no direct contact with him until he was over two and a half years old. This occurred when Dallas remarried Bernice. The baby had lived with her since November, 1919, and during her prior marriage to Fayette Stiles. From about 1922-32 Robert lived in Iowa and Hammond, Indiana, with Dallas, and visited him at later times after moving to Rockford, Illinois in 1931-32.

Over these years Dallas acknowledged and proclaimed in various ways, but not in writing, and to various people that Robert was, in fact, his son. Yet, Dallas confided to relatives and others that Robert was not, in fact, his natural son.

It is our opinion that the law applicable to this case in

Indiana is I.C. 1971, 29-1-2-7—Ind. Ann. Stat. § 6-207 (Burns 1953):

> "Illegitimate children.—(a) * * *
>
> (b) For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his father, if but only if, (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the child and acknowledges the child to be his own. * * * When such paternity is established as provided herein such child shall be treated the same as if he were the legitimate child of his father, * * *"

In *Thacker* v. *Butler, supra,* the court says:

> "The appellant concedes in his brief that if the decedent had died prior to the enactment of the 1953 Probate Code, the said illegitimate child would have inherited by reason of the acknowledgment of the father during his lifetime under § 6-2309, Burns' 1933 Repl., old Probate Code.
>
> "Under our law, we are compelled to agree with the appellants' contention that the right of inheritance of an illegitimate child must be determined under the conditions of § 6-207, Burns' 1953 Repl. of the present Probate Code, which was in full force and effect at the time of decedent's death."

This court further, in the *Butler* opinion, was of the opinion that:

> "It is the appellees' contention, and it was apparently the trial court's contention, that the said Orville Thacker's status as the acknowledged child of Oscar Thacker became vested upon the mutual acknowledged relationship of parent and child and by reason of said acknowledgment, the said Orville Thacker was the only child of said decedent as the deceased was not survived by a widow or surviving parents; that the said Orville Thacker was the decedent's only heir-at-law who by intestate succession is entitled to inherit the decedent's estate and that his right of inheritance which he had by virtue of the said acknowledgment cannot be changed by any subsequent act and/or acts of the legislature, and further that § 6-102, Burns' 1953

Repl. provides, among other things: '. . . no accrued right shall be impaired by its provision.'

"We cannot agree with the foregoing contentions in this because our Supreme Court, in the recent case of *Scott* v. *Scott, Admrx. et al.* (1958), 238 Ind. 474, at 480, 150 N. E. 2d 740, held, in substance, that a child at the time of his birth does not have a vested right in the estate of his parent who was then living, as it is well established under the common law and statutory law of this state that although children may become heirs on the death of their parent, they do not have a vested interest as such children in the property during the parent's lifetime, but may be disinherited."

It may be noted that the *Scott* case, *supra,* was an adoption case.

Further, in the *Thacker* case, *supra,* the court quoted subsection (b) of Ind. Ann. Stat. § 6-207 (Burns 1953 Replacement) which we have hereinabove quoted, and establishes its reasoning with the following:

"We believe it was the intent of the legislature by the use of the phrase, 'establish by law,' in Item 1 of the above-quoted subsection (b) to mean that the paternity of such child must be first determined in a judicial proceeding brought for that purpose in a court of law having jurisdiction to determine such issue, during the lifetime of the putative father, in order for an illegitimate child to inherit from such father. *Acknowledgment alone no matter how positive or often is not sufficient under our present law.*" (Our emphasis.)

It affirmatively appears in the record that the decedent, Dallas Schick, was married to Bernice and divorced from her and she had married Fayette Stiles, when they made a gesture toward adopting Robert who was the illegitimate son of Blanche Frietag. It further appears that Dallas was never married to Blanche Frietag and the record is silent as to whether Dallas Schick ever knew Blanche Frietag in her lifetime. It also appears that no legal determination of the parentage of said illegitimate child was ever made by judicial

proceedings whereby the appellee ever established his paternity as the son of Dallas Schick or any other male person by law, as required by I.C. 1971, 29-1-2-7—Ind. Ann. Stat. § 6-207 (Burns 1953) subsection (b), *supra,* in order that he could inherit as an illegitimate child of an intestate decedent under the present Probate Code.

Inasmuch as we have heretofore held that Bernice never adopted Robert in the State of Iowa, we find it unnecessary to go into the question as to the necessity for Dallas Schick to have adopted appellee Robert Schick after his marriage to Bernice, an adoptive mother, before the proper relationship could be established that Robert could inherit from Dallas.

Assuming, but not agreeing, that Bernice had adopted Robert as her son and legal heir at law, which could be done at the time of the purported adoption under the law of Iowa in 1920 when the purported attempt to adopt was commenced, Bernice was married to Fayette Stiles, with the two of them, along with the natural mother of Robert also executing the petition for adoption.

During the marriage of Bernice to Fayette Stiles, which existed between the dates of December 1, 1918, and September 5, 1923, when they made a purported attempt to adopt Robert Schick nee Frietag, Dallas Schick did not at that time attempt to adopt Robert. Dallas Schick never did legally adopt Robert as his son and heir at law. In about two and one-half years after the divorce between Bernice and Fayette Stiles, Dallas did remarry Bernice, but they were next divorced on February 17, 1926. As the record heretofore stated shows, Bernice and Dallas lived together a number of years after this, but were never remarried and Bernice later married one Harry Cave in 1934.

In the year of 1946 Robert found and recorded the original petition for his adoption, executed in 1920, after the Iowa

law permitted the adoption of an adult. In Iowa, it was only after 1927 that adults could be adopted.

Even though it had been possible to adopt Robert in 1946, as a minor under the old petition, Fayette Stiles and Bernice could not have done so as they were not man and wife and Bernice was the wife of Harry Cave at that time; for the reason that the Iowa law, in 1946, required the adopting parents to be married to each other at the time of the adoption. (Code of Iowa, 1927, ch. 218, sec. 1-9.)

Appellants contend that even though Robert could qualify under Acts of 1965 this would only permit him to inherit from his natural parent as though he had not been adopted. With this we must agree and Robert would still be required to meet the conditions and requirements of I.C. 1971, 29-1-2-7—Ind. Ann. Stat. § 6-207 (Burns 1953) subsection (b) in order to inherit from Dallas Schick. That he could never do, as Dallas was married all that time, namely, from 1941 until his death in 1968, to Martha, and no adoption proceedings were attempted or had to make him the adopted son and heir of Dallas Schick and Martha Schick. (Indiana law requires the spouse to join in the petition for adoption unless she is the natural mother of the child, and then she must consent when her husband adopts such child.)

I.C. 1971, 31-3-1-6—Ind. Ann. Stat. § 3-120 (Burns 1969 Cumulative Supplement) provides, among other things, that an adoptive parent may give consent to the adoption of a child which has been adopted by the adoptive parent. There is nothing in the record to show that Bernice ever gave anyone a consent to adopt Robert, which is further evidence that he was never adopted in the first instance as a minor and that the laws of Iowa did not acknowledge his adoption when he recorded the adoption papers.

It affirmatively appears that no legal determination of the parentage of said illegitimate child was ever determined by

judicial proceeding, whereby the appellee had ever established his paternity by law, as required by I.C. 1971, 29-1-2-7—Ind. Ann. Stat. § 6-207 (Burns 1953) subsection (b), *supra,* or under the Iowa statute in order that he could inherit as an illegitimate child of an intestate decedent under the present Code.

In our opinion, under both Indiana law and Iowa law Dallas Schick did make statements and perform acts which could and would have legitimized Robert Schick, but a legitimation of Robert Schick by Dallas Schick was impossible for the reason that there is absolutely no proof in the record that Robert Schick was actually born to Blanche Frietag as the son of Dallas Schick and Dallas never married Blanche Frietag.

Dallas Schick could have made Robert his legal heir the same as if he were of his own flesh and blood had the purported adoption of Robert Schick nee Frietag been completed and legal in Iowa by Bernice and Fayette Stiles and had he further adopted Robert. Since there was no adoption in Iowa, then it was legally impossible for Dallas Schick to have adopted Robert as the adopted son of Bernice and Fayette Stiles after Bernice and Fayette were divorced and Dallas had remarried Bernice. However, no attempt was made at adopting him by Dallas, but, in our opinion, the acts which are contended by appellee to legitimize him were merely kindnesses on the part of Dallas Schick and his last wife, Martha Schick, by referring to him as Dallas' son, rather than by embarrassing him by disclosing his illegitimacy. Such is the natural, and in our opinion, the proper thing for a person in this position to do.

It is our further opinion that even though Robert may have been entitled in Iowa to inherit from Dallas Schick, he was not entitled to inherit from Dallas Schick in Indiana, which situs controlled the descent and disposition of estates, as heretofore set out in I.C. 1971, 29-1-2-7—Ind. Ann. Stat. § 6-207 (Burns 1953), *supra.*

This court necessarily finds that under the law and the facts of this case the judgment of the trial court is contrary to law and must be reversed; the court further finds that the judgment heretofore entered should be vacated and held for naught, and the same is so ordered, and the judge of the Lake Superior Court, Room 1, shall enter judgment for the defendants, Martha Schick and Mercantile National Bank of Indiana, Administrator, and against the plaintiff, Robert Schick; that Martha Schick is the sole and only heir at law of Dallas Schick, deceased.

Judgment reversed.

Sullivan, P. J. concurs; Buchanan and Robertson, JJ. concur.

NOTE.—Reported in 274 N. E. 2d 291.