562 N.E.2d 763 (1990)
In the matter of the Estate of Ramie Edwards, Deceased.
Doritha Mason and Myrtle Houchins, Appellants (Respondents below),
v.
JAMES EDWARDS AND NELLIE L. EDWARDS APPELLEES (PETITIONERS BELOW).
No. 48A02-8910-CV-528[1].
Court of Appeals of Indiana, First District.
November 20, 1990.
*764 Jesse L. Coleman, Indianapolis, for appellants.
Max Howard, Anderson, for appellees.
ROBERTSON, Judge.
Doritha Mason and Myrtle Houchins, the decedent's niece and sister (collectively referred to as Houchins) appeal a judgment in favor of James Edwards and Nellie Edwards (the Edwards) on the estate's and Houchins' petitions to determine heirship and the Edwards' verified petition to establish paternity, which were consolidated for trial.
We affirm.
Two issues emerge in this appeal: the propriety of denying, on the grounds of untimeliness and waiver, Houchins' Ind. Trial Rule 12(B)(6) motions to dismiss for failure to state a claim upon which relief could be granted, made orally at trial before any evidence had been presented and after the Edwards' case-in-chief; and, the sufficiency of the evidence to sustain the finding that the Edwards were the decedent, Ramie Edwards', sole heirs-at-law.
The record reflects that both motions to dismiss are premised upon IND. CODE 31-6-6.1-6(b), the statute of limitations for establishing paternity for purposes of support. At the hearing on the first motion, the parties also argued the applicability of I.C. 29-1-2-7, the probate code section directed at the determination of heirship. Houchins contends in this appeal that upon the face of the petition to establish paternity, the Edwards have failed to state a claim, both because of I.C. 31-6-6.1-6(b) and on the alternative ground that the Edwards have not met the prerequisites for heirship contained in I.C. 29-1-2-7. Hence, she does not argue that the petitions to determine heirship should be dismissed; rather, her intent is to obtain a favorable judgment on her petition by showing that the Edwards are not heirs. The record is therefore sufficient for appellate review of both grounds.
As a general rule, reliance upon a statute of limitations as a bar is an affirmative defense which must be pleaded in a responsive pleading. T.R. 8(C); Nichols v. Amax Coal Co. (1986), Ind., 490 N.E.2d 754, 755. However, matters in bar such as the defense of the statute of limitations may be raised by motion to dismiss for failure to state a claim for relief, if such matters appear on the face of the complaint. Id.; Monsanto v. Miller, (1983), Ind. App., 455 N.E.2d 392, 398; Middelkamp v. Hanewich (1977), 173 Ind. App. 571, 364 N.E.2d 1024, trans. denied. A T.R. 12(B)(6) motion, filed after the pleadings are closed, which tests the sufficiency of the complaint, will be treated as a motion for judgment on the pleadings under T.R. 12(C) and determined in the same manner as a motion brought pursuant to 12(B)(6). DeHart v. Anderson (1978), 178 Ind. App. 581, 383 N.E.2d 431.
T.R. 12(H)(2) expressly permits the defense of failure to state a claim made by motion for judgment on the pleadings to be raised at a trial on the merits. Indeed, this court has concluded that such a motion made after the presentation of evidence is timely. *765 In the Matter of the Estate of Carroll (1982), Ind. App., 436 N.E.2d 864.
The trial court cited two cases in support of its ruling that the motion was untimely and the defense waived: Bennett v. Bennett (1977), 172 Ind. App. 581, 361 N.E.2d 193 and Roe v. Doe (1972), 154 Ind. App. 203, 289 N.E.2d 528. From these cases, we derive the principles, which predated the advent of our trial rules, that dilatory pleas must be filed at the earliest opportunity and that a statute of limitations defense may be waived if not raised and pleaded.
We agree with Houchins, however, that these principles do not govern the case at bar. As the authorities cited above indicate, a statute of limitations defense no longer must be affirmatively pleaded; it may be raised by a 12(B)(6) motion as it was here. Bennett has little precedential value because in that case the statute of limitation defense was neither pleaded nor raised but stated as an afterthought in the motion to correct error. The waiver found in Bennett can therefore be attributed to the former, long-standing rule that matters raised for the first time in the motion to correct error are deemed waived.
Bennett also indicates that a party may, by course of conduct, place himself in a position where equity will not permit the assertion of the expiration of a statute of limitations as a defense. 361 N.E.2d at 197. This rule applies, however, only when the party to be charged engages in conduct calculated to lead the other party to inaction, i.e. when the elements of equitable estoppel have been met. Collins v. Dunifon (1975), 163 Ind. App. 201, 323 N.E.2d 264 (cited in Bennett, 361 N.E.2d at 197). See, e.g., Kroslack v. Estate of Kroslack (1987), Ind., 504 N.E.2d 1024; In Re the Marriage of Murray (1984), Ind. App., 460 N.E.2d 1023. There is no indication in the record Houchins did anything to induce the Edwards' purportedly late filing. Preparation for trial alone, without resulting prejudice, will not suffice. See Kohlman v. Finkelstein (1987), Ind. App., 509 N.E.2d 228, 230-31, trans. denied.
Consequently, the trial court's ruling cannot be sustained on the grounds of untimeliness and waiver. However, there really is no viable issue with respect to the time limitation found in I.C. 31-6-6.1-6(b). The statutes relating to proof of heirship and inheritance rights have nothing to do with suits against putative fathers to obtain support for illegitimate children. They are not in pari materia. Solomon v. Fenton (1969), 144 Ind. App. 100, 244 N.E.2d 228, trans. denied. The denial of Houchins' 12(B)(6) statute of limitations motion was therefore proper.
Alternatively, Houchins argues that the Edwards are unable to prove any set of facts entitling them to relief because their complaint does not show on its face that the statutory prerequisites for heirship have been met. As Houchins argues, the rights of heirs are determined by the statutes of descent in force at the time of the intestate's death. Scott v. Scott (1958), 238 Ind. 474, 478, 150 N.E.2d 740, 742; In Re the Estate of Schick (1971), 149 Ind. App. 549, 563, 274 N.E.2d 291, 299, trans. denied. Ramie Edwards died intestate July 12, 1988. The statute in effect at the time provided:
(b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if:
(1) the paternity of the child has been established by law:
(A) during the father's lifetime; or
(B) within five (5) months after the father's death; or
(2) the putative father marries the mother of the child and acknowledges the child to be his own.
I.C. 29-1-2-7.
On its face, the statute applies when paternity has been established by law during the father's lifetime or within five (5) months after the father's death. The nature of the action is not controlling as long as a finding of paternity is necessary for the result reached and the quantum of proof establishing such paternity meets the *766 standard set forth in the inheritance statute, i.e., that the mother's testimony be corroborated by other evidence or circumstances. Burnett v. Camden (1970), 253 Ind. 354, 357, 254 N.E.2d 199, 201, cert. denied, 399 U.S. 901, 90 S.Ct. 2202, 26 L.Ed.2d 556. It is not disputed by the Edwards that, until the filing and determination of this action, paternity had not been established in a judicial proceeding. The question then from Houchins' perspective is simply whether posthumous filing alone, within the five-month period following the father's death, satisfies the statute.
The Edwards argue that the 1989 amendment, which would permit a paternity action to be commenced within five months of the intestate's death, should be and was properly applied retroactively. Having looked to the statute and amendment, the circumstances under which they were enacted, the old law on the subject, and the evils and mischiefs to be remedied, we agree with the trial court that the legislature intended the amendment to apply retroactively to effectuate its original intent.
Our goal in interpreting and applying any statute is to ascertain legislative intent. As a general rule, a statutory amendment which changes the language of a prior statute indicates a legislative intention that the meaning of the statute has been changed and raises a presumption that the legislature intended to change the law. However, the presumption will not apply if it appears that the amendment was made only to express the original intention of the legislature more clearly. Pike County v. State ex rel. Hardin (1984), Ind. App., 469 N.E.2d 1188, 1194; Lake County Beverage Co. v. 21st Amendment, Inc. (1982), Ind. App., 441 N.E.2d 1008, 1011, trans. denied.
At common law, a child born out of wedlock had no inheritable blood. The statutes antedating I.C. 29-1-2-7 were designed to ameliorate this condition. Wilson v. Bass (1918), 70 Ind. App. 116, 120, 118 N.E. 379, 380, trans. denied. Illegitimate children acknowledged during their father's lifetime were permitted to inherit his estate. See, e.g., Acts 1901 p. 288 (Burns' Ann. Stat. § 2630a 1901).
In 1953, with enactment of the probate code, the statutory preconditions for inheritance changed. An illegitimate child could inherit "as if he were the legitimate child of his father, if but only if, (1) the paternity of such child has been established by law, during the father's lifetime, or (2) if the putative father marries the mother of the child and acknowledges the child to be his own." By attaching these conditions to inheritance, the State sought to minimize fraudulent claims. Camden, 254 N.E.2d at 202. The requirement that paternity be established during the father's lifetime was an evidentiary one intended to promote accuracy and fairness by insuring the determination took place in an adversarial context. In the Matter of the Estate of Hendren (1984), Ind. App., 459 N.E.2d 437, 442, trans. denied.
With a view toward these purposes, this court decided in Hendren that a family allowance could be awarded to an illegitimate child despite the literal requirement in I.C. 29-1-2-7 of a legal determination of paternity during the father's lifetime. We determined that the legislature's evidentiary purpose had been sufficiently furthered where a formal judicial proceeding had been commenced during the father's lifetime and the father had acknowledged the child as his own but a judicial determination had not been forthcoming while the father was alive. The Hendren court reiterated the concerns of Chief Judge Ratliff, expressed in S.M.V. v. Littlepage (1982), Ind. App., 443 N.E.2d 103, trans. denied (Ratliff, J., concurring), that the State's interests in discouraging stale and spurious claims and problems of proof had lost vitality as justification for statutes restricting the rights of illegitimates to inherit in the face of the state of scientific knowledge, U.S. Supreme Court decisions, and the General Assembly's amendment of I.C. 31-6-6.1-6 to permit, among other things, posthumous claims instituted within five months of the death of the putative father.
Perhaps in response to Hendren, the legislature enacted the version of I.C. 29-1-2-7 *767 which was in effect at the time Ramie Edwards died. This statute permits posthumous claims but favors only those that result in a judicial determination of paternity within five months of the father's death, i.e. the specific fact situation existing in Hendren. The 1987 enactment does nothing to alleviate the constitutional doubts which surfaced in Hendren and Littlepage; to the contrary, in conjunction with I.C. 31-6-6.1-6, it creates a whole new class of Hendren-type cases: those of children who file within the period of limitations for purposes of support but whose cases are not concluded within five months of the father's death.
This brings us to the retroactive application of the 1989 amendment, P.L. 261-1989. The amendment permits an illegitimate's paternity to be established by law for purposes of inheritance if the cause of action is filed within five months of the intestate's death. The amending legislation contains the following additional provision:
SECTION 4. A determination of paternity or related order that:
(1) was issued before the effective date of this act;
(2) was issued five (5) or more months after the father's death;
(3) resulted from a civil proceeding for the establishment of paternity that was filed in accordance with IC 31-6-6.1-6:
(A) during the father's lifetime; or
(B) within five (5) months after the father's death;
is legalized and validated to the same extent as if the determination of paternity or related order had been issued during the father's lifetime or within five (5) months after the father's death.
SECTION 5. Because an emergency exists, this act takes effect upon passage.
(Emphasis supplied.) As we read section 4, express retroactive effect is given to paternity determinations made pursuant to I.C. 31-6-6.1-6. The amendment undoubtedly was intended to permit illegitimate children who commenced an action within the statute of limitations to inherit. But regardless of the curative effect given paternity determinations made pursuant to I.C. 31-6-6.1-6, such determinations still must meet the stricter proof requirements of I.C. 29-1-2-7(c). Camden, 254 N.E.2d at 202; Fenton, 244 N.E.2d 228. Prospective application of I.C. 29-1-2-7(b) still effectively prevents inheritance by illegitimate children who fail to obtain an adjudication of paternity within five months of the intestate's death.
Moreover, P.L. 261-1989 appears to distinguish between illegitimate children and adults. While the State's interest in the orderly disposition of decedents' estates may justify the enforcement of a generally applicable limitation on the time and manner in which claims may be asserted, and the State's interest in finality may provide an additional, valid justification for barring the belated assertion of claims, Reed v. Campbell (1986), 476 U.S. 852, 856, 106 S.Ct. 2234, 2237, 90 L.Ed.2d 858, it is difficult to see how these interests are any better served by a statutory scheme which differentiates upon age. The level of proof is the same in either forum. Camden, 254 N.E.2d at 202.
We acknowledge that retroactive application of a statute is the exception rather than the rule, and that statutes ordinarily are applied prospectively absent strong and compelling reason. Gosnell v. Indiana Softwater Service (1987), Ind., 503 N.E.2d 879, 880. We are also compelled to adopt that construction which sustains the statute, carries out its purpose and renders all of its parts harmonious. Irmscher v. McCue (1987), Ind. App., 504 N.E.2d 1034, 1036.
The 1989 amendment plainly was intended to ensure the inheritance statute was not constitutionally defective and to reflect the legislature's original intent to permit posthumous determinations of heirship. The statutory amendment must be applied retroactively to accomplish these purposes. Accordingly, we conclude the trial court properly applied the 1989 amendment.
Houchins' final allegation of error concerns the sufficiency of the evidence to sustain the determination of heirship. However, it appears from the record and *768 supplemental record of the proceedings that only certain "requested portions" of the evidence were transcribed and only certain exhibits included in the record.
When the sufficiency of evidence is challenged, the burden is upon the appellant to convince the reviewing court that the evidence is insufficient. The court cannot come to such a conclusion from a record that omits a portion of the evidence for the obvious reason that the omitted evidence may furnish the missing link. Raymundo v. Hammond Clinic Association (1983), Ind., 449 N.E.2d 276, 277. A cause cannot be reversed for the insufficiency of the evidence to sustain the finding and judgment unless the record clearly shows that all of the evidence is in the record. Swiggett v. Swiggett (1958), 237 Ind. 541, 543, 147 N.E.2d 220, 221.
We find no reversible error.
Judgment affirmed.
BAKER and MILLER, JJ., concur.
NOTES
[1] This case has been diverted from the Second District by direction of the Chief Judge.